675 S.E.2d 531 (2009)
In the Interest of D.F. et al., children.
No. A08A2371.
Court of Appeals of Georgia.
March 13, 2009.
Banks & Riedel, Jeffrey S. Banks, Sarah E. Hinkle Riedel, for Appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Virginia B. Fuller, Asst. Atty. Gen., W. Ashley Hawkins, Forsyth, for Appellee.
PHIPPS, Judge.
The father of two minor children appeals an order of the Juvenile Court of Monroe County terminating his parental rights. He claims that the evidence shows nothing more than that he is mildly mentally retarded and exercised poor judgment in supervising the children on one occasion. Specifically, he challenges the sufficiency of the evidence to clearly and convincingly show parental misconduct or inability by him or that termination of his parental rights would be in the children's best interests. He also complains of the juvenile court's consideration of prior unappealed deprivation orders, on the ground that he was not represented by counsel during the hearings preceding entry of those orders. Finding no merit in any of the father's claims of error, we affirm.
The Georgia Code sets forth a two-step process to be used in termination of parental *532 rights cases. First, the trial court determines whether there is present clear and convincing evidence of parental misconduct or inability. Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. If the trial court finds that these four factors exist, then the court determines whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home.[1]
On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.[2]
"The termination of parental rights is a severe measure. However, a termination hearing seeks above all else the welfare of the child. In determining how the interest of the child is best served, the juvenile court is vested with a broad discretion which will not be controlled in the absence of manifest abuse."[3]
1. Although a significant amount of evidence favorable to the father was admitted at the termination hearing, other evidence in support of the termination petition of the Monroe County Department of Family and Children Services (DFCS) authorized the juvenile court's decision.
Evidence introduced at the hearing showed that the father has an income as well as stable housing; he obtained a psychological assessment and completed parenting classes, as required by his reunification case plan; and he was otherwise cooperative with DFCS. He keeps a neat and tidy home without safety hazards to children and can perform basic tasks such as cooking.
But other evidence established that DFCS first became involved with the father and the children's mother as a result of then three-year-old D.F. and two-year-old F.F. having been left unsupervised dangerously close to a body of water in which they could have drowned. Statements made by the father prior to the hearing indicated that he did not appreciate the dangerous situation in which the children had been placed. DFCS also determined that in Florida, where the parents previously resided, they had a history of "domestic violence and neglect and inadequate supervision of" D.F. and F.F.
At the time of the termination hearing, the father was forty-two years old, and the children were five and seven years old. Evidence showed that during the father's school years, he was placed in special education classes and completed only the seventh grade. When he was 20 years old, he was involved in a car accident in which he sustained serious, life-altering brain damage. A psychologist testified that the father has a full scale IQ of 63; a verbal IQ of 61, which is well into the range of mental retardation; and a spatial reasoning IQ of 73, which is in the borderline range of mental retardation. The psychologist further testified that the father's mental function is in a range from seven to twelve years old. At the termination hearing, he could not identify the President of the United States or the correct date and had trouble identifying the county where he resides.
Other evidence showed that he resides alone, has no close friends or relatives, and is thus somewhat isolated. Although he testified that he has certain employable skills, he is unemployed, does not drive, and his only *533 means of transportation is a bicycle that lacks any means to transport a child or children. He receives social security disability payments that have to be made through checks payable to his father.
Although the father completed parenting classes and underwent a psychological evaluation, as required by the reunification case plan, both the psychological evaluation and a parenting assessment performed after his completion of parenting classes concluded that he is incapable of parenting the children due to his limited mental abilities. The psychologist who performed the evaluation testified that the father is not able to parent the children without continuing and uninterrupted assistance from others. More specifically, the psychologist concluded that with family support the father could perhaps care for the children. But as testified to by the DFCS caseworker, there is no such family support available to him. The father testified that if he were reunited with the children, he would move into his sister's home so that she could provide him with parenting assistance. But he now lives in Georgia, she lives in Alabama, and an evaluation of her home resulted in it being rejected as a placement for the children primarily because of her and her husband's failure to disclose their criminal backgrounds.
Additionally and importantly, through testing the father, the psychologist who performed the evaluation and the person who conducted the parental assessment concluded that the father continues to lack the judgment to protect the children from unsafe situations such as the one posed during the incident that resulted in the DFCS's initial family intervention. The guardian ad litem concurred with the conclusions of the psychologist. A psychiatrist from whom the father obtained a more favorable evaluation did not testify. Other evidence was presented showing that the children had been in foster care for over three years; that they are well adjusted; that the foster parents and children have bonded with each other; and that the foster parents want to adopt the children. A DFCS caseworker gave testimony authorizing the juvenile court to find that the children would suffer emotional harm by remaining in foster care. The juvenile court found that "the children are in foster care," and that, if returned to the care of the father, they "would be deprived in various ways of neglect and the potential for harm would be great."
The evidence authorized the juvenile court to find that although the father has not engaged in any abuse or intentional misconduct whatsoever toward his children, and although he has made a sincere and good faith effort to obtain reunification with the children by meeting his parental responsibilities, his mental infirmities simply render him incapable of parenting the children without the full-time assistance that is unavailable to him. Although he and the children have certainly bonded, the juvenile court found that the father does not have a "parental" bond with the children. And although it would certainly be preferable to place the children with a relative so that the father could maintain a relationship with them, efforts in that regard also failed. The children have been in foster care for a prolonged period, and it appears that they currently have an opportunity to obtain the emotional stability provided by a permanent home through adoption by the foster parents, in whose care they are doing very well. The evidence thus authorized the juvenile court to find that deprivation of the children is caused by the father's parental inabilities[4] and that termination of his parental rights would be in their best interests.[5]
*534 2. The father contends that at the termination hearing the juvenile court erred in overruling his objection to admission of the 72-hour hearing order and the adjudicatory order that followed it.
The father complains that he was not represented by counsel at either the 72-hour hearing or the adjudicatory hearing and that, at those hearings, the court did not determine that he had knowingly and voluntarily waived his right to counsel. As argued by the father, a party has a statutory entitlement to be represented by counsel at all stages of any deprivation proceeding; and if a party appears without counsel, the court shall ascertain whether such party knows of his or her right to counsel and to be provided with counsel by the court if he or she is indigent.[6] And although it does appear from the 72-hour hearing and adjudicatory orders that the father was not represented by counsel at the hearings, transcripts of the 72-hour and adjudicatory hearings are not in the record. We are thus unable to determine from the record whether he validly waived his right to counsel.
In any event, we have held that because a termination proceeding is not the proper time to assert error in a deprivation proceeding, parents are bound by findings in unappealed deprivation orders (even if they were unrepresented by counsel at the deprivation hearings).[7] Here it appears from the record that the father, with the assistance of counsel, failed to perfect his attempted appeals of those orders.
Moreover, the juvenile court did not rely on these unappealed orders to establish that the children are deprived;[8] and other evidence introduced at the termination hearing was sufficient to support the court's deprivation finding. Because a termination of parental rights proceeding is a civil matter, the father is required to show that he was harmed by the erroneous denial of his right to counsel in order to warrant a reversal.[9] Here, no reversible harm appears.
Judgment affirmed.
JOHNSON, P.J., and BARNES, J., concur.
NOTES
[1] In the Interest of C.M., 275 Ga.App. 719, 720, 621 S.E.2d 815 (2005) (citations and punctuation omitted).
[2] In the Interest of C.R.G., 272 Ga.App. 161-162, 611 S.E.2d 784 (2005) (citation omitted).
[3] In the Interest of M.L.P., 236 Ga.App. 504, 510(1)(d), 512 S.E.2d 652 (1999) (citations and punctuation omitted).
[4] See In the Interest of B.J.H., 194 Ga.App. 282, 283(2), 390 S.E.2d 427 (1990) (mental disability that renders a parent incapable of caring for the child is a valid legal basis for termination of parental rights).
[5] See In the Interest of B.I.F., 264 Ga.App. 777, 781(1), 592 S.E.2d 441 (2003) (well established that children need stability provided by permanence of a home or they are likely to suffer serious emotional problems); In the Interest of C.F., 251 Ga.App. 708, 714(2), 555 S.E.2d 81 (2001) (termination of parental rights in children's best interests where they had been in DFCS custody for over three years, one child was doing well in foster home, and foster mother wanted to adopt child); compare In the Interest of J.H., 258 Ga.App. 211, 216, 573 S.E.2d 481 (2002) (no evidence that children would suffer harm by continuing in foster care).
[6] In the Interest of C.B., 258 Ga.App. 143, 147(3), 574 S.E.2d 339 (2002), citing OCGA § 15-11-6(b).
[7] In the Interest of M.S., 279 Ga.App. 254, 259-262(1), 630 S.E.2d 856 (2006).
[8] Compare, e.g., id. at 261, 630 S.E.2d 856.
[9] In the Interest of C.B., supra at 148, 574 S.E.2d 339.