774

(681 SE2d 218)

BARNES, Judge.

The biological mother of D. R. and S. M. T. sought and was granted discretionary review of the order terminating her parental rights to the children.[1] Following our review, we affirm.

On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. *In the Interest of S. H.*, 251 Ga. App. 555 (1) (553 SE2d 849) (2001). "We do not weigh the evidence and must defer to the trial judge as the factfinder." (Citation and punctuation omitted.) *In the Interest of C. F.*, 251 Ga. App. 708 (555 SE2d 81) (2001).

The record shows that in July 2004, five-year-old D. R., and three-year-old S. M. T., were found to be deprived as a result of their mother's drug addiction and lack of supervision. It was noted that the mother had not complied with a case plan and had not obtained drug screens or assessments. The mother stipulated to the finding of deprivation. The children remained in their mother's physical custody under a protective order, and the mother was to abide by the terms of her case plan which included drug treatment and no illegal drug use. That order was not appealed. In October of that year, S. M. T., the younger child, reported that the mother and her boyfriend hit him on his chest and buttocks with their hands and a belt almost every day, and that he "would like them to stop." Both boys used speech that "was wholly unintelligible," almost like their own language.

At a November 9, 2004 review hearing, the mother was present but so disruptive that the juvenile court found her in contempt, and placed the children in the temporary custody of the Department of Family and Children Services ("DFACS"). After a November 12, 2004 detention hearing, at which the mother was present, the trial court found probable cause of deprivation and ordered the mother to undergo a psychological evaluation. DFACS filed a deprivation petition on December 21, 2004, alleging that the children were deprived because the mother's boyfriend physically abused S. M. T.,

---

[1] "[T]he salient date for triggering the change in appellate procedure in an appeal from an order terminating parental rights is the time the legal action is filed, not the date that an order sought to be appealed in such action is issued." *In the Interest of K. R.*, 285 Ga. 155, 156 (674 SE2d 288) (2009). The Department of Family and Children Services's petition to terminate the mother's parental rights was filed on December 12, 2007; thus, the appellate procedure prior to January 1, 2008, rather than OCGA § 5-6-35 (a) (12), is applicable. Consequently, the mother has a right of direct appeal from the order terminating her parental rights.

the mother did not have stable housing, and she had not obtained a negative drug screen. The children were again adjudicated deprived, but the case was converted to the "Court's adopted protocol for Brief Intervention Families/Non-Custodial Deprivation case" because the mother had "an adequate support system and stable housing," which the trial court determined made it appropriate for the children to remain in the mother's custody while she was in a treatment program. The children were still under a protective order, and the mother was specifically prohibited from allowing her boyfriend to live with her, be alone with the children, or discipline the children. The mother did not appeal the order.

The mother's psychological evaluation performed during that time indicated that she has a low level of intellectual functioning and measured in the bottom two percent of individuals her age. The psychological evaluation concluded that given her level of cognitive ability, academic achievement, and low income, "it is questionable that she will be able to provide the type of secure, stable, and healthy environment her children need to grow and develop emotionally and psychologically," and that she required a high degree of supervision, support, and supplemental resources to be able to parent D. R. and S. M. T.

A February 2005 case plan required the mother to attend and successfully complete a psychological evaluation, attend recommended counseling sessions and parenting classes, use nonharmful methods of discipline for the children, participate in mental health therapy with the children, and maintain stable housing and employment. In March 2005, DFACS filed a third petition alleging that the boys were deprived because the boyfriend continued to live with the mother, physically disciplined the children, and that the children were at risk in the home. In the subsequent shelter care order removing the children for a third time, the trial court found probable cause that the mother violated the safety plan by testing positive for marijuana and allowing her boyfriend to discipline the children. The children were found to be deprived, and the mother did not appeal this order.

A subsequent case plan submitted and adopted by the court included the previous goals but also required that the mother participate and encourage the children with speech and mental health therapy, maintain employment, obtain and maintain stable housing, cooperate with DFACS, and attend scheduled visits with the children. The citizen review panel in September 2005 indicated that the concurrent permanency plan was to return the children to the mother or place them with fit and willing relatives. It was further noted that the mother's whereabouts were unknown.

In March 2006, the citizen review panel recommended nonre-

YALE LAW LIBRARY

unification. The mother's location was still unknown, and she was not making any efforts to complete the case plan goals. The record reflects that the mother had only completed two of the court-ordered goals — a psychological exam and a signed release of information. In April of that year, after an adjudicatory hearing, D. R. and S. M. T. were again found to be deprived. The mother was not present at the hearing, and the order was not appealed.

On July 3, 2006, DFACS filed a petition to end reunification services because of the mother's failure to comply with the case plan, which the juvenile court granted. The mother was not present for the hearing on the petition, and her location was still unknown. On December 12, 2007, DFACS filed a petition to terminate the mother's parental rights, which the trial court granted.

The juvenile court found that the mother did not provide evidence of stable housing, stable employment, proof of attending counseling, nor the results of her drug screens and drug assessment. The court further found, "she has abandoned her children by not providing emotional and financial support for them or visiting them since October 21, 2005," and noted her extensive criminal history, including four or more probation violations resulting in her incarceration and that she was currently on probation. The court observed that the mother failed to complete her case plan, that the children have no bond with the mother and had expressed a desire to be adopted by their foster parents, and that both boys suffer from ADHD and Fetal Alcohol Syndrome.

At the termination hearing on February 7, 2008, the caseworker testified that the mother gave her a current address in January 2008, and that she had not visited D. R. or S. M. T. since 2005. She testified that the basis for the termination was the mother's unrehabilitated substance abuse, unstable housing and employment, domestic violence, lack of proper supervision for the children, and abandonment based on the two-year gap between visits. The caseworker testified that the mother failed to financially support the children, and that the children have no meaningful bond with the mother. She further testified that D. R. and S. M. T. have a strong relationship with the foster parent they have lived with since 2006, who wishes to adopt them, and have thrived in his care.

The psychologist providing on-going treatment to the children reported that "[b]oth boys spoke favorably of their relationship with [their foster father] and have verbalized consistently their desire to continue to live with him rather than going back to their family of origin." He also noted the history of nightmares following family visits and was firmly in favor of completing the termination process and that the boys be adopted by the foster parent.

The mother testified that she had worked at a pizza restaurant

for the past month, and worked at a fast food restaurant for three months before that, but had not provided DFACS with proof of employment. At the time of the hearing, she was living with a boyfriend, but was looking for other housing although she had completed no paperwork, and had no transportation. The mother also testified that she was taking parenting classes, but that she had two more classes before she was finished. She testified that her four incarcerations stemmed from a cocaine possession charge and that she had two years of probation remaining. The mother acknowledged that she had last visited D. R. and S. M. T. in 2005, did not have proof of her drug screenings, and had missed the last hearing because she was incarcerated.

1. The mother contends that there was no clear and convincing evidence that the children were deprived and that the deprivation is likely to continue. The termination of parental rights under OCGA § 15-11-94 involves a two-prong analysis.

> In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-94 (a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.

(Citation, punctuation and footnote omitted.) *In the Interest of R. W.*, 248 Ga. App. 522, 523-524 (1) (546 SE2d 882) (2001). The mother only contests the finding of deprivation, and that the cause of deprivation is likely to continue.

Regarding the deprivation finding, since the mother did not appeal the juvenile court's orders finding the child deprived, she is bound by that finding for purposes of the termination hearing. See *In the Interest of T. P.*, 270 Ga. App. 700, 704 (1) (608 SE2d 43) (2004).

There is also evidence that the cause of the deprivation is likely to continue or not be remedied. This Court has consistently held that evidence of the mother's past conduct may be considered in determining whether the deprivation is likely to continue. *In the Interest of M. R.*, 282 Ga. App. 91, 99 (1) (637 SE2d 743) (2006).

Here, despite her good intentions, the mother has never success-

YALE LAW LIBRARY

fully parented D. R. and S. M. T. and does not appear to be able to do so. "The test in determining termination of parental rights is whether the mother, *ultimately standing alone*, is capable of mastering and utilizing the necessary skills to meet her parenting obligations." (Punctuation and footnote omitted; emphasis in original.) *In the Interest of T. W. O.*, 283 Ga. App. 771, 776 (1) (a) (iii) (643 SE2d 255) (2007). Here, there was more than clear and convincing evidence that the mother is simply not capable or willing to fulfill those obligations. As noted above, the mother failed to comply with her case plan.

Specifically, the mother failed to maintain stable housing or employment, failed to obtain negative drug screenings, failed to visit the children or maintain a bond with them, and was shown to have difficulty ever developing parenting skills. Moreover, there was testimony that the mother would have difficulty developing adequate skills in light of her mental and emotional deficiencies. Ultimately, "the trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court." (Citation and punctuation omitted.) *In the Interest of G. B.*, 263 Ga. App. 577, 583 (1) (588 SE2d 779) (2003). Based on the evidence presented, the juvenile court was authorized to conclude that continued deprivation is likely to continue.

2. The mother next contends the juvenile court committed reversible error by denying her request for the termination hearing transcripts for use in her motion for new trial and discretionary application. She also maintains that the court's refusal to provide the transcripts is a denial of due process and equal protection, and that the juvenile court violated OCGA § 15-11-41 when it failed to have the motion for new trial hearing recorded.

After the termination, the mother was appointed new counsel. The mother thereafter filed a request for transcript on March 26, 2008, and a motion for new trial on March 28, 2008. She also sought, among other things, a continuance, an extension of time to obtain transcripts, and motion for funds for a court reporter to record the motion for new trial hearing. On May 9, 2008, after a hearing, the juvenile court denied the motion for new trial, and all outstanding motions, including the request for transcript and motion for funds to obtain a court reporter for the motion for new trial hearing.

The Supreme Court of Georgia has held that an indigent parent whose parental rights have been terminated is entitled to "a paupered transcript of the proceedings" for use in appealing the decision of the trial court. *Nix v. Dept. of Human Resources*, 236 Ga. 794 (225 SE2d 306) (1976). Here, in denying the mother's motion, the court's rationale appeared to be expediency, as it noted in the order that "in enacting the provision mandating discretionary appeal for termina-

tion of parental rights cases, the Legislature envisioned a speedy resolution to the termination of parental rights cases at the appellate level."

The mother's due process and equal protection arguments were not made below and thus, are not properly before this Court. See *Robles v. State*, 277 Ga. 415, 421 (9) (589 SE2d 566) (2003). A constitutional challenge raised for first time on appeal is not properly before an appellate court. Id.

Pretermitting whether the juvenile court erred in denying the mother a copy of the transcript for the new trial hearing, the mother is required not only to show error, but harm[2] as well. OCGA § 9-11-61. Notwithstanding the very general constitutional arguments that are not properly before us, the mother fails to demonstrate how she was harmed by the juvenile court's refusal to provide a transcript for her motion for new trial hearing. This is particularly true in this case, given that the transcript and entire record are before this Court for her appellate review, and the mother has not pointed to anything in the transcript that would have been relevant to any issue that could only be raised in her motion for new trial.

The juvenile court has "discretion [to] hear and determine the motion before the transcript of evidence and proceedings is prepared and filed," or to grant an extension of time for the preparation and filing of the transcript. OCGA § 5-5-40 (c). Further, on appeal, the mother is not "limited to the grounds urged in the motion" for new trial. OCGA § 5-5-40 (g). "[A]n appellant is entitled to argue all enumerations of error which are properly raised in addition to the matters contained in the new trial motion." *Hulsey v. Sears, Roebuck & Co.*, 138 Ga. App. 523, 525 (1) (226 SE2d 791) (1976).

We are aware that the legislature's well-intentioned goal of reducing the languishing of children in the system and that expediting the appellate process can conflict with our Supreme Court's mandate of "provid[ing] to an indigent parent effective representation at all stages of any proceeding involving the termination of that parent's right to his or her child" provided for by *Nix*, supra, 236 Ga. at 796.

Although the mother also argues that the trial court erred in denying her a copy of the termination hearing transcript to submit with her application for discretionary review, see *Harper v. Harper*, 259 Ga. 246 (378 SE2d 673) (1989), there is no requirement that the

---

[2] Because "termination of parental rights cases are more civil in nature than criminal[,]" (citation and punctuation omitted) *In the Interest of A. H. P.*, 232 Ga. App. 330, 334 (2) (500 SE2d 418) (1998), we apply the harmless error rule for civil cases.

transcript be filed with the application. OCGA § 5-6-35 (c) provides that

> [t]he applicant shall include as exhibits to the petition a copy of the order or judgment being appealed and should include a copy of the petition or motion which led directly to the order or judgment being appealed and a copy of any responses to the petition or motion. An applicant may include copies of such other parts of the record or transcript as he deems appropriate. No certification of such copies by the clerk of the trial court shall be necessary in conjunction with the application.

A transcript is required, however, "where a part of the record or transcript is necessary in order for the appellate court to determine whether or not the application should be granted." *Harper*, supra at 246. Moreover, "the applicant or respondent may quote or paraphrase relevant portions of the record or transcript." Id.

Court of Appeals Rule 31 governs applications for discretionary appeals under OCGA § 5-6-35 in this Court. The Rule provides:

. . .

> (b) The applicant shall include a copy of any petition or motion which led directly to the order or judgment being appealed and a copy of any responses to the petition or motion with the application.
> (c) . . . The material must be sufficient to apprise the Court of the appellate issues, in context, and support the arguments advanced. Failure to submit sufficient material to apprise the Court of the issues and support the argument shall result in denial of the application. . . .
> (e) Discretionary applications must contain a stamped "filed" copy of the trial court's order or judgment from which the appeal is sought. . . .

None of these provisions require that a complete transcript of the proceedings be submitted with the application. Thus, we discern no reversible error in this case.

Nevertheless, we are mindful of the importance of the issue involved in these cases, see *Nix*, supra, 236 Ga. at 795 ("There can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to its offspring."), and therefore expect that the representatives of DFACS will cooperate with the parent's legal representatives in preparing substitutes for the transcript in these cases. See *Harper v. Harper*, supra, 259 Ga. at 246 (the

YALE LAW LIBRARY

parties to the application may "agree on what happened").

3. The mother contends that her trial counsel was ineffective. The mother argues that trial counsel was ineffective for failing to object to the testimony of the caseworker because it was inadmissible hearsay, and also for failing to ensure all orders were filed in this case, failing to locate the mother, and failing to make sure that the mother received copies of the orders.

> In order to prevail on a claim of ineffective assistance of counsel the mother must show that her counsel's performance was deficient and that the deficient performance was prejudicial to her defense. To meet the first prong of this test, the mother must overcome the strong presumption that counsel's performance fell within a wide range of professional conduct and that counsel's decisions were not made in the exercise of reasonable professional judgment.

(Citations and punctuation omitted.) *In the Interest of A. H. P.*, 232 Ga. App. 330, 334 (2) (500 SE2d 418) (1998).

"[A]ll information helpful in determining the questions presented, including oral and written reports, *may be received by the court* and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition." (Emphasis supplied.) OCGA § 15-11-56 (a); accord *In the Interest of C. N. S.*, 248 Ga. App. 84, 87 (545 SE2d 633) (2001). The mother, however, does not identify any particular finding of fact that was based on the hearsay of which she complains. "We will not presume the trial court committed error where that fact does not affirmatively appear in the record. [Cit.]" *Rowe v. Rowe*, 195 Ga. App. 493, 494 (2) (393 SE2d 750) (1990).

Even if the juvenile court did consider hearsay, this will not constitute reversible error if the other evidence introduced at the termination hearing, excluding the hearsay, supports the juvenile court's findings and conclusions. See *In the Interest of T. A. M.*, 280 Ga. App. 494, 499 (3) (634 SE2d 456) (2006). Moreover, in a nonjury trial, we must presume that the court is able to select and consider the properly presented evidence and dismiss the remainder. This Court will reverse the court below only if no legal evidence supports the lower court's ruling. *In the Interest of C. G. B.*, 242 Ga. App. 705, 711 (4), (5) (531 SE2d 107) (2000).

Regarding the other alleged shortcomings of trial counsel — failing to ensure all orders were filed in this case, failing to locate the mother, and failing to make sure that the mother received copies of the orders — the mother merely recites the contentions with no citations to the record, legal authority or argument as to how these

deficiencies prejudiced her defense. "Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned." Court of Appeals Rule 25 (c) (2). Moreover, even if we assume for the sake of argument that counsel was deficient in these areas, the mother has not shown a reasonable probability that the outcome of the termination proceeding would have been different but for that deficiency.

Consequently, as the mother has shown no prejudice because of trial counsel's alleged failures noted above, this ineffective claim must also fail.

4. The mother's contention that the trial court committed reversible error because the termination proceedings were not conducted under controlled and regulated circumstances was not raised below. As noted previously, this Court cannot consider an argument being raised for the first time on appeal.

5. Likewise, the mother's contention that OCGA § 5-6-35 (a) (12) is unconstitutional must fail. Since the mother did not properly raise the constitutional challenges below or obtain a ruling from the trial judge, these claims are not properly presented for appellate review. *In re L. C.*, 273 Ga. 886, 889 (548 SE2d 335) (2001).

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED JULY 7, 2009 — 

*Good & Lee, Darice M. Good*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Mark J. Cicero, Assistant Attorneys General, Cynthia Roberts-Emory, Mary A. Horowitz*, for appellee.