S09A0931. In the Interest of A. C., a child.

(686 SE2d 635)

HINES, Justice.

This Court granted a discretionary appeal in this termination-of-parental-rights case to address: whether a challenge to the constitutionality of a statute governing appellate procedure that is made for the first time on appeal constitutes an exception to the general rule that this Court will not consider a constitutional challenge to a statute unless it was raised and ruled on in the trial court; if such a challenge is an exception to the general rule, whether OCGA § 5-6-35 (a) (12), which requires an application for appeal from an order terminating parental rights, is constitutional; and whether the juvenile court erred in terminating the father's parental rights in this case. For the reasons that follow, we conclude that the present constitutional challenge to OCGA § 5-6-35 (a) (12) is properly before the Court, that the challenge is unsuccessful on the merits, and that it was not error to terminate the father's parental rights.

The female child, A. C., was born on May 25, 2003. The child's father had entered negotiated pleas of guilty to two counts of child molestation and one count of cruelty to children in the first degree on August 25, 2000, and the Superior Court of Cobb County had sentenced the father to ten years to be served on probation. On October 20, 2003, a warrant issued for the father's arrest pursuant to a petition for revocation of the father's probation because he was living in the same home as his infant daughter, A. C., in violation of the terms of his probation. The father left Cobb County with A. C. and A. C.'s mother.

On May 9, 2007, the father was arrested in Fulton County by U. S. Marshals for failing to register as a sex offender and unsupervised contact with a child under the age of 18, both violations of his probation. His probation was revoked and he was ordered to serve the remainder of his sentence in custody, with a maximum release date of May 2010. At the time of the father's arrest, A. C. was under his care. The whereabouts of the mother were unknown. A. C. was taken into custody under the provisions of OCGA § 15-11-45,[1] and

---

[1] OCGA § 15-11-45 provides:

    (a) A child may be taken into custody:

        (1) Pursuant to an order of the court under this article, including an order to an employee of the Department of Juvenile Justice designated in accordance with paragraph (2) of subsection (i) of Code Section 49-4A-8 or to an employee of the Department of Corrections, to apprehend a child who has escaped from an institution or facility operated either by the Department of Juvenile Justice or the Department of Corrections or a child who has been placed under supervision and who has broken the conditions thereof;

custody was placed in the Georgia Department of Human Resources ("DHR"), acting through the Fulton County Department of Family and Children Services ("DFCS").

On May 16, 2007, DFCS filed a deprivation complaint in the Juvenile Court of Fulton County on the basis that A. C. was without a legal guardian and anyone to care for her. A deprivation petition was filed on May 22, 2007; the petition alleged that A. C. was deprived and in need of protection because of certain detrimental conditions, including that the father had absconded from Georgia and that his whereabouts had been unknown to authorities for three and a half years; that A. C. was in her father's care and custody at the time of his arrest; that his arrest left the child without a legal custodian; that her father was unable to provide adequate care and a home for A. C. because of his conviction for child molestation; that the whereabouts of A. C.'s mother were unknown and she was listed as a "missing person"; that the mother was believed to be in the process of moving to California and disappeared after last having contact with A. C.'s father; and that the father was a suspect in the mother's disappearance.

The juvenile court held a hearing in the matter on September 24, 2007; an amended deprivation petition was filed on the day of the hearing alleging that A. C. had been sexually abused by her father.

---

(2) Pursuant to the laws of arrest;

(3) By a law enforcement officer or duly authorized officer of the court if there are reasonable grounds to believe that the child has committed a delinquent act or if there are reasonable grounds to believe that he or she is an unruly child;

(4) By a law enforcement officer or duly authorized officer of the court if there are reasonable grounds to believe that the child is suffering from illness or injury or is in immediate danger from his or her surroundings and that his or her removal is necessary;

(5) By a law enforcement officer or duly authorized officer of the court if there are reasonable grounds to believe that the child has run away from his or her parents, guardian, or other custodian;

(6) By a law enforcement officer or duly authorized officer of the court if a parent or guardian of a child has contacted a law enforcement agency and reported that the child is absent from parental custody without consent and a facility created pursuant to paragraph (2) of subsection (e) of Code Section 15-11-47 is available; or

(7) By a law enforcement officer or duly authorized officer of the court if a child is violating a curfew and a facility created pursuant to paragraph (2) of subsection (e) of Code Section 15-11-47 is available.

(b) The taking of a child into custody is not an arrest, except for the purpose of determining its validity under the Constitution of this state or of the United States.

(c) When a child who is taken into custody pursuant to this article has committed an act which would constitute a felony under the laws of this state if committed by an adult, the juvenile court, within 48 hours after it learns of the taking into custody, shall notify the district attorney or duly authorized assistant district attorney of the judicial circuit in which the juvenile proceedings are to be instituted.

The father, though incarcerated, was present at the hearing and represented by counsel. The juvenile court found that the father stipulated to receiving the original petition filed on May 22, 2007, and acknowledged that the allegations therein were true; the father denied the allegations in the amended petition. In its judgment entered on November 2, 2007, the juvenile court detailed the sexual abuse allegations made by A. C., as disclosed to A. C.'s foster parent, to the effect that her father and mother had engaged in sexual intercourse in her presence, that her mother had molested her, that her father had inserted his penis into A. C.'s vagina, and that the father had taken photographs during the sexual encounters. The juvenile court found A. C. to be deprived, as defined in OCGA § 15-11-2 (8),[2] and ordered that temporary care and custody be given to DHR by and through DFCS. Temporary custody of A. C. was granted to A. C.'s maternal aunt; on June 5, 2008, the maternal aunt and her husband filed a petition to terminate the mother's and father's parental rights.

On September 11, 2008, the juvenile court held a hearing on the termination petition. The father was present at the hearing, was represented by counsel, and testified. During the hearing, a DFCS supervisor testified that when A. C. came into DFCS's care, she had a yeast infection and required both physical and psychological care, and that A. C. had revealed to her foster parents and in therapy that she was sexually molested by her father. A senior psychotherapist and forensic evaluator with the Georgia Center for Child Advocacy testified, inter alia, that she did a forensic evaluation of A. C.; that A. C. disclosed that her father had touched and inserted his penis into her vagina; that she was also molested by a male friend of her father; that she was in a motel with her mother, father, and the father's friend and that her father told the friend to touch her and her mother's vaginas and that her father was photographing them. The psychotherapist further testified that she found A. C. to be "absolutely credible" and that the child was "terrified of her father." On September 30, 2008, the juvenile court entered a judgment

---

[2] OCGA § 15-11-2 (8) provides:

"Deprived child" means a child who:

(A) Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals;

(B) Has been placed for care or adoption in violation of law;

(C) Has been abandoned by his or her parents or other legal custodian; or

(D) Is without a parent, guardian, or custodian.

No child who in good faith is being treated solely by spiritual means through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall, for that reason alone, be considered to be a "deprived child."

terminating the parental rights of A. C.'s father and mother. In so doing, the juvenile court specifically found, inter alia, that there were current unappealed orders finding A. C. to be deprived and placing A. C. in the temporary care and custody of the maternal aunt and her husband for purposes of adoption, the conditions of deprivation as previously found by the court had not been alleviated, that A. C. was abandoned by both her mother and father, that the parents would be unable to alleviate the causes of A. C.'s deprivation, and that termination was in the best interest of A. C.

1. A. C.'s father filed an application for discretionary appeal of the termination order in the Court of Appeals, raising, inter alia, a constitutional challenge to present OCGA § 5-6-35 (a) (12), which became effective on January 1, 2008, requiring that appeals from orders terminating parental rights be by application rather than be a matter of direct appeal. The Court of Appeals transferred the case to this Court.

The father did not raise a constitutional challenge to the statute in the trial court. Certainly, as a general matter, this Court will not rule on a constitutional challenge to a statute unless the issue has been raised and ruled on in the trial court. *In re L. C.*, 273 Ga. 886, 889 (2) (548 SE2d 335) (2001). However, this Court has recognized a limited exception to such general rule in the instance of a challenge to the constitutionality of a statute governing appellate procedure that is necessarily made for the first time on appeal. In *Fife v. Johnston*, 225 Ga. 447 (169 SE2d 167) (1969), a direct appeal was filed from the grant of the defendant's motion for new trial, and this Court dismissed the appeal after rejecting the appellant's challenge to the constitutionality of Code Ann. § 6-701, the predecessor of OCGA § 5-6-34, providing the procedure for interlocutory appeal. In *Schiesser v. Ross*, 256 Ga. 414 (349 SE2d 745) (1986), this Court entertained a constitutional challenge to subsection (a) (8) of OCGA § 5-6-35 made following the dismissal of a direct appeal. In that case, this Court dismissed the appellant's direct appeal of the denial of a complaint in equity to set aside a judgment because an application to appeal was required under OCGA § 5-6-35 (a) (8). *Schiesser v. Ross*, supra at 414. On motion for reconsideration, the appellant argued that OCGA § 5-6-35 (a) (8) denied her equal protection, and this Court addressed the merits of the equal protection challenge, ultimately rejecting the challenge and denying the motion for reconsideration. *Schiesser v. Ross*, supra at 414.

This Court's narrow departure from the general rule governing a constitutional challenge is justified because the statute of appellate procedure at issue comes into play only when an adverse ruling below is obtained and the dissatisfied party determines to pursue an

appeal.[3] The exception is in accord with the precept that a litigant has standing to assert a constitutional challenge to a law only if that law has an adverse impact on that litigant's own rights. *Manlove v. Unified Govt. of Athens-Clarke County*, 285 Ga. 637 (680 SE2d 405) (2009).

Accordingly, this Court will address the father's constitutional challenge to OCGA § 5-6-35 (a) (12).

2. A. C.'s father contends that OCGA § 5-6-35 (a) (12) is unconstitutional under the State and Federal Constitutions as it interferes with his right to parent his daughter, denies him due process, and is violative of equal protection because it

> treats parents whose parental rights are terminated differently from parents whose custody rights are temporarily removed. . . . Parents have the right to directly appeal all orders effecting custody of a child except for a termination of parental rights ·order which OCGA § 5-6-35 (a) (12) makes discretionary.

The father does not explain how the discretionary appeal provision interferes with his right to parent or amounts to a deprivation of due process. As for the claim of denial of equal protection, fundamentally no equal protection violation can exist unless legislation treats similarly-situated individuals differently. *Ga. Dept. of Human Resources v. Sweat*, 276 Ga. 627, 630 (580 SE2d 206) (2003). One who is subject to the termination of parental rights cannot be equated to an individual who faces an interruption of custody; termination is a much more severe measure. *In the Interest of D. F.*, 296 Ga. App. 625, 626 (675 SE2d 531) (2009). It is a remedy of last resort to address the most exceptional situation of a deprived child and that child's continuing deprivation. *In the Interest of K. D. E.*, 288 Ga. App. 520, 526 (1) (654 SE2d 651) (2007). Moreover, unlike certain changes in, or temporary suspensions of, custody, a decision to terminate parental rights must follow a multi-step process in which the trial court makes numerous determinations under statutory criteria antecedent to a consideration of the best interest of the child. Id. at 523.

Even assuming arguendo that A. C.'s father has demonstrated that an individual whose parental rights have been terminated is

---

[3] In Division 5 of *In the Interest of D. R.*, 298 Ga. App. 774, 782 (681 SE2d 218) (2009), the Court of Appeals held that the mother's contention that OCGA § 5-6-35 (a) (12) was unconstitutional was not properly presented for appellate review because the mother had not raised the constitutional challenges below or obtained a ruling from the trial court. Consequently, the holding in Division 5 is hereby overruled.

similarly situated to one who has had a change in custodial rights for the purpose of an equal protection challenge, the equal protection challenge must still fail. The classification created by OCGA § 5-6-35 (a) (12) is reasonable. *Schiesser v. Ross*, supra at 414. The State has a legitimate interest in not permitting children determined to be deprived to languish in temporary care, but instead, to leave this situation for permanent stable homes as expeditiously as possible. See *In the Interest of D. R.*, 298 Ga. App. 774, 779 (2) (681 SE2d 218) (2009). The discretionary appeal process provided in OCGA § 5-6-35 (a) (12) helps accomplish this goal by offering effective appellate review in an expedited manner, yet permitting a full appeal of the termination of parental rights if that is shown to be warranted.

3. Finally, the father contends that the juvenile court erred in terminating his parental rights because his misconduct or inability to parent has not been shown, that while A. C. was originally deprived because of the father's incarceration, she is not currently deprived as she is in the care and custody of her maternal aunt, that even if A. C. is currently deprived, such deprivation will not continue indefinitely because he will be able to arrange for the care and custody of A. C. after he is released from prison, and that there was insufficient evidence to prove that the continued deprivation of A. C. will cause her harm.

Before terminating parental rights, the juvenile court must adhere to the test provided in OCGA § 15-11-94,[4] that is, the court must decide whether there is present clear and convincing evidence

---

[4] OCGA § 15-11-94 provides:

(a) In considering the termination of parental rights, the court shall first determine whether there is present clear and convincing evidence of parental misconduct or inability as provided in subsection (b) of this Code section. If there is clear and convincing evidence of such parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home. If the court finds clear and convincing evidence of the circumstance provided in paragraph (5) of subsection (b) of this Code section, the court shall presume that termination of parental rights is in the best interest of the child.

(b) Except as provided in subsections (e) through (h) of Code Section 15-11-96, the court by order may terminate the parental rights of a parent with respect to the parent's child if:

(1) The written consent of the parent, acknowledged before the court, has been given; provided, however, that acknowledgment before the court is not necessary where the parent or parents voluntarily surrender the child for adoption as provided by subsection (e) of Code Section 19-8-4, 19-8-5, 19-8-6, or 19-8-7;

(2) A decree has been entered by a court of competent jurisdiction of this or any other state ordering the parent, guardian, or other custodian to support the child, and the parent, guardian, or other custodian has wantonly and willfully failed to comply with the order for a period of 12 months or longer;

of parental misconduct or inability proven by evidence showing that the child is deprived, that the lack of proper parental care or control is the cause of such deprivation, that the cause of deprivation is likely to continue or not likely to be remedied, and that the continued

---

(3) The parent has abandoned the child or the child was left under circumstances that the identity of the parent is unknown and cannot be ascertained despite diligent searching, and the parent has not come forward to claim the child within three months following the finding of the child;

(4)(A) The court determines parental misconduct or inability by finding that:

(i) The child is a deprived child, as such term is defined in Code Section 15-11-2;

(ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived;

(iii) Such cause of deprivation is likely to continue or will not likely be remedied; and

(iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.

(B) In determining whether the child is without proper parental care and control, the court shall consider, without being limited to, the following:

(i) A medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child;

(ii) Excessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child;

(iii) Conviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship;

(iv) Egregious conduct or evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature;

(v) Physical, mental, or emotional neglect of the child or evidence of past physical, mental, or emotional neglect of the child or of another child by the parent; and

(vi) Injury or death of a sibling under circumstances which constitute substantial evidence that such injury or death resulted from parental neglect or abuse.

(C) In addition to the considerations in subparagraph (B) of this paragraph, where the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights:

(i) To develop and maintain a parental bond with the child in a meaningful, supportive manner;

(ii) To provide for the care and support of the child as required by law or judicial decree; and

(iii) To comply with a court ordered plan designed to reunite the child with the parent or parents; or

(5) The parent has been convicted of the murder of the child's other parent.

(c) If the court does not make an order of termination of parental rights, it may grant an order under Code Section 15-11-55 if the court finds from clear and convincing evidence that the child is a deprived child.

deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child; then the juvenile court must consider whether the termination of parental rights would be in the child's best interest. *In the Interest of J. J.*, 299 Ga. App. 271 (682 SE2d 349) (2009). Appellate review is limited to addressing the question of whether any rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated. Id. In this review, the appellate court must necessarily defer to the juvenile court's fact finding, weighing of the evidence, and credibility determinations. Id.

Here, the father's apparent failure to appeal the prior deprivation orders precludes him from contesting the juvenile court's finding of deprivation. *In the Interest of J. J.*, supra at 276.

As for any alleged conflicts in the evidence, these were for the juvenile court to resolve. *In the Interest of K. C. W.*, 297 Ga. App. 714, 719 (2) (b), n. 4 (678 SE2d 343) (2009). Simply, there was clear and convincing evidence to support the juvenile court's findings resulting in the termination of the father's parental rights. *In the Interest of J. J.*, supra at 279.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 5, 2009.

*Phillip Jackson*, for appellant.
*Abdulhakim Saadiq, Tyrone M. Hodnett II*, for appellee.