**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 30, 2013**

# In the Court of Appeals of Georgia

A13A1168. IN THE INTEREST OF A. M. B. & M. B., CHILDREN.    DO-063

DOYLE, Presiding Judge.

We granted the mother's application for discretionary review of a trial court order terminating her parental rights to five-year-old A. M. B. and three-year-old M. B. After thorough consideration of this case, including our review of the transcript of the termination hearing, which was not available at the time we granted the mother's application, we have determined that the juvenile court's order was supported by clear and convincing evidence.[1] Accordingly, we find that the

---

[1] See *In the Interest of K. D. E.*, 288 Ga. App. 520 (654 SE2d 651) (2007) ("On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the [mother's] right[] to custody ha[s] been lost. This [C]ourt neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.") (punctuation and citations omitted).

application for discretionary appeal was improvidently granted, and we dismiss the mother's appeal.

Here, the Department of Family and Children Services ("the Department") ordered shelter care for A. M. B. and M. B. in June 2011, when the children were four years old and two years old respectively, based on an allegation of sexual abuse of A. M. B. by the father[2] in January 2011, use of illegal drugs by the father, and lack of housing or income for either of the parents. At the time the children were removed, police found methamphetamine paraphernalia and marijuana in the home, the father's sisters accused him of sexually abusing them when they were young, and there was a complaint against the father for sexually abusing his three-year-old niece. Initially, the Department prepared a reunification case plan for the mother, but thereafter moved to terminate the mother's parental rights.

At the termination hearing, evidence showed that the mother was likely to subject the children to generalized neglect; the mother exhibited major depressive disorder and generalized anxiety disorder which likely would damage the children; the mother had not gained any skills from attending parenting classes, could not cope

---

[2] At the time of the allegations of sexual abuse, the mother and children lived with the father at a home provided by his family. After the children were removed from the parents, the mother continued to live with the father.

with any negative behaviors of the children, and was not aware of her own parental incompetence;[3] the mother was unemployed during the twelve months of her case plan, and only worked inconsistently during the last month before the hearing; the mother failed to complete individual counseling sessions, failed to complete drug treatment, failed to have consistent housing, and failed to provide clean drug screens during the plan[4]; and the mother continued her dependent relationship with the father, who was alleged to have sexually abused A. M. B. and who evidenced antisocial behavior disorder, a provisional diagnosis of pedophilic behaviors, and long-term substance abuse with an overall low prognosis for treatment of these issues. All of these facts support the juvenile court's findings and the order terminating the mother's parental rights.[5]

---

[3] Testimony was presented that the mother was detached and frustrated during visits, she lacked structure and could not discipline her children, and she did not appear to learn or want to learn anything during parenting classes.

[4] The mother had one clean urine screen in May of 2012, shortly before the petition was filed, but she refused to submit a hair follicle screen at that time; she refused all of her other drug screens.

[5] See id. at 523 ("Georgia law provides for a two-step process that must be followed in determining whether to terminate parental rights. OCGA § 15-11-94 (a) requires that the trial court first determine whether there is present clear and convincing evidence of parental misconduct or inability. Parental misconduct or inability is determined under the four criteria set forth in OCGA § 15-11-94 (b) (4)

Although the mother claims that the termination order was based only on her lack of financial resources and contends that she should have been given more time to address her case plan,

> [e]ssentially, the [mother] is asking this [C]ourt to reweigh the evidence and reevaluate the credibility of witnesses, which we will not do. While the record does show the [mother's slight] efforts to comply with some aspects of the case plan, what weight to give that evidence was a question for the trier of fact. Likewise, judging the credibility of [her] good intentions was a task for the juvenile court. Moreover, the juvenile court was authorized to consider the [mother's] past conduct in determining whether the causes of deprivation were likely to continue. And the decision as to a child[rens'] future[s] must rest on more than positive promises which are contrary to negative past fact.[6]

---

(A) (i)-(iv). Those four factors are: (1) the child is deprived; (2) the lack of proper parental care and control by the parent whose rights are being terminated is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are shown to exist by clear and convincing evidence, then the court must also determine whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home." ) (punctuation omitted).

[6] (Punctuation and footnotes omitted.) See *In the Interest of D. B.*, 306 Ga. App. 129, 137 (1) (701 SE2d 588) (2010).

Given this record, we conclude that the juvenile court was authorized to terminate the mother's parental rights.[7]

In accordance with Court of Appeals rules, we granted the mother's application for discretionary review without the benefit of the full appellate record, including the transcript of the termination hearing; however, because the record supports the order of the court below, we conclude that the application for discretionary appeal was improvidently granted. Accordingly, the order granting the mother's application is vacated, and her appeal is hereby dismissed.[8]

*Appeal dismissed. Boggs, J., concurs. McFadden, J., concurs fully and specially.*

---

[7] See id. at 139 (2); *In the Interest of R. B.*, 309 Ga. App. 407, 411-413 (1) (710 SE2d 611) (2011).

[8] See, e.g., *Killian v. State*, 315 Ga. App. 731, 732 (728 SE2d 258) (2012); *Mosely v. Ga. Peace Officer &c.*, 217 Ga. App. 798 (458 SE2d 503) (1995).

A13A1168. IN THE INTEREST OF A. M. B. AND M. B., children.

MCFADDEN, Judge, concurring fully and specially.

I concur fully in the majority opinion. I write separately to express a concern about the implications of the extension in 2008 of the discretionary appeal procedure to terminations of parental rights. Very often – as in this case – such applications come to this court without a transcript of the termination hearing. It is my understanding that some juvenile courts provide transcripts to indigent applicants only after an application for discretionary appeal has been granted. I question the soundness of such a practice.

Until 2008, terminations of parental rights were subject to the direct appeal procedure set out at OCGA § 5-6-34. In legislation effective January 1, 2008, the General Assembly added such appeals to the list of types of cases subject to the discretionary procedure set out at OCGA § 5-6-35. See Ga. L. 2007, p. 554, § 3.

In this court a party petitioning for discretionary appeal has the burden of showing that "[r]eversible error appears to exist" or that "[t]he establishment of a precedent is desirable." Ct. App. R. 31 (a). Without a transcript, it is often difficult for this court to determine that the burden has been met. It is true that "[i]f the parties to the application agree on what happened in the trial court and adequately present it to the appellate court there is no need for parts of the record or transcript." *Harper v. Harper*, 259 Ga. 246 (378 SE2d 673) (1989). And we have announced our expectation that in light "of the importance of the issue involved in these cases, . . . the representatives of DFACS will cooperate with the parent's legal representatives in preparing substitutes for the transcript in these cases." *In the Interest of D. R.*, 298 Ga. App. 774, 780 (2) (681 SE2d 218) (2009) (citation omitted), overruled on other grounds by *In the Interest of A. C.*, 285 Ga. 829 (686 SE2d 635) (2009). "But where a part of the record or transcript is necessary in order for the appellate court to determine whether or not the application should be granted, that part should be

included with the application or response." *Harper*, supra. And these cases are often fact intensive.

A petitioner trying to secure a transcript for an application for discretionary appeal faces certain obstacles. One is the time needed to prepare a transcript. That obstacle can generally be overcome by filing a motion for new trial. See OCGA § 5-5-40 (c) (authorizing trial courts to delay the briefing and hearing on a motion for new trial until after the transcript is prepared).

Another obstacle is the cost of preparing a transcript. As to that cost, it was well established, prior to 2008, that indigent parties seeking to appeal from terminations of parental rights were entitled to a transcript at no charge. See *Nix v. Dept. of Human Resources*, 236 Ga. 794, 796 (225 SE2d 306) (1976) ("It would be a strange interpretation (of the juvenile code) indeed if we should find that the legislature specifically gave (the parent) the right to appeal; that it specifically provided that all proceedings in juvenile court should be reported; that it specifically provided for the appointment of counsel for indigent persons, but that it nevertheless refused to permit (the parent) to pursue her statutory right to appeal solely because she was unable to afford a transcript. We are unwilling to so hold.") (citation and punctuation omitted). This court followed *Nix* in *In the Interest of B. C. P.*, 229 Ga.

3

App. 111, 115 (3) (493 SE2d 258) (1997) ("Transcript costs are to be provided to an indigent parent appealing a deprivation action. Although the statutes are silent, the Supreme Court of Georgia has spoken. *Nix v. Dept. of Human Resources,* [supra], held that an indigent parent whose parental rights have been terminated is entitled to 'a paupered copy of the transcript' for use in appealing the decision of the trial court. Id. Although the right in termination cases now stems from OCGA § 15-11-85 (b) and not OCGA § 15-11-30, the latter root still provides a firm base for government-provided transcripts in deprivation cases. The Supreme Court expressly referenced the predecessors to OCGA §§ 15-11-30 and 15-11-26 (e) as authority for the right to a paupered transcript. It applied the venerable principle of implication, 'in est de jure.'"). See also *M. L. B. v. S. L. J.*, 519 U. S. 102, 128 (VI) (117 SCt 555, 136 LEd2d 473) (1996) ("we hold that Mississippi may not withhold from M. L. B. a record of sufficient completeness to permit proper appellate consideration of her claims") (citation and punctuation omitted).

It may be that the rule set out by our Supreme Court in *Nix*, supra, 236 Ga. 794, does not cover applications to appeal from terminations of parental rights. But that is far from clear.

4

While the General Assembly's reason for subjecting some types of cases to the discretionary appeal procedure was that they had been consuming more judicial resources than their importance warrants, see OCGA § 5-6-35 (a) (6) (appeals from judgments for $10,000 or less); OCGA § 42-12-8 (prisoners' litigation), that was not the reason appeals from terminations were made discretionary. See *M. L. B.*, supra, 519 U. S. at 119 (IV) (the United States Supreme Court "was unanimously of the view that the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment. It was also the Court's unanimous view that few consequences of judicial action are so grave as the severance of natural family ties.") (citations and punctuation omitted). Appeals from terminations of parental rights were made discretionary in order to advance the State's

> legitimate interest in not permitting children determined to be deprived to languish in temporary care, but instead, to leave this situation for permanent stable homes as expeditiously as possible. See *In the Interest of D. R.*, [supra, 298 Ga. App. at 779 (2)]. The discretionary appeal process provided in OCGA § 5-6-35 (a) (12) helps accomplish this goal by offering effective appellate review in an expedited manner, yet permitting a full appeal of the termination of parental rights if that is shown to be warranted.

5

*In re A.C.*, supra, 285 Ga. at 834 (2). See also *In the Interest of J. N.*, 302 Ga. App. 631, 634 (1) (691 SE2d 396) (2010) (indicating that direct appeals are still available from deprivation orders).

In this case the lack of a transcript at the application stage caused delay. From the application, we discerned the possibility that the mother's argument had merit, leading us to grant the application. But without a transcript we were unable to properly evaluate the case and determine whether a rational trier of fact could have found by clear and convincing evidence that the mother's rights should be terminated. Now, with the benefit of a transcript and a full record, we dismiss the appeal as improvidently granted.

The application was filed in September 2012 and granted in October 2012. The appeal was then docketed in this court in February 2013. So the General Assembly's objective of expedited resolution was frustrated in this case by the lack of a transcript at the application stage.