**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 12, 2014**

# In the Court of Appeals of Georgia

A14A0517. IN THE INTEREST OF M. M. M. T., A CHILD.

BARNES, Presiding Judge.

Following the grant of her discretionary application, the mother of then 23-month-old M. M. M. T. appeals the trial court's order terminating her parental rights.[1] She contends that the evidence was insufficient to support the termination. Upon finding that the full appellate record, including the transcript of the termination hearing that was not included with the application, supports the order of the court below, we conclude that the application for discretionary appeal was improvidently granted and dismiss the appeal.

> On appeal from a termination order, we view the evidence in the light most favorable to the appellee and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. We do not weigh the

---

[1] The father, whose parental rights were also terminated, is not a party to this appeal.

evidence or determine the credibility of the witnesses but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.

(Punctuation and footnotes omitted.) *In the Interest of H. F. G.*, 281 Ga. App. 22, 23 (635 SE2d 338) (2006).

So viewed, the evidence demonstrates that after M. M. M. T. was born on August 11, 2011 with Xanax in her system, the Bartow County Department of Family and Children Services ("DFACS") opened a case on the mother. Instead of removing the child, DFACS initially developed a safety plan with the maternal great-grandmother so that the mother could obtain substance abuse, parenting, and mental health services. But on February 22, 2012, when the child was approximately six months old, the trial court issued a shelter care order placing custody of the child with DFACS based on allegations that the mother's continued substance abuse prohibited her from properly supervising the child. Apparently, the child had been left in a swing overnight and was taken to the hospital when she fell out of the swing and suffered a contusion.

In the 72-hour hearing order filed on February 23, 2012, the trial court found probable cause that M. M. M. T. was deprived because of the mother's inability to

independently care for the child, and issues related to her substance abuse were reserved for later adjudication. Following a hearing on DFACS' deprivation hearing,[2] on March 8, 2012, the trial court entered an order finding clear and convincing evidence that M. M. M. T. was deprived because of the mother's substance abuse, inadequate housing, unstable income, lack of proper supervision, and uncontrolled diagnosis of a fainting disorder– syncope. M. M. M. T. was placed in the temporary custody of DFACS. The mother was ordered to, among other things, become and remain drug free, submit to drug screens, complete a substance abuse evaluation and follow the recommendations, be assessed for family drug court treatment and complete the program if accepted, obtain safe and stable housing, obtain stable income, complete parenting class, and seek treatment for her fainting disorder. A final disposition order on the deprivation petition was entered on April 19, 2012, and a supplemental order incorporating DFACS' case plan was entered on May 29, 2012. The plan's goals were the same goals set forth in the March 2012 deprivation order, with the additional requirements that the mother provide child support, and cooperate with DFACS and any other agencies providing services. Following a judicial citizen

_____

[2] The termination hearing transcript is the only transcript included with the record.

3

panel review, on December 7, 2012, the trial court entered an order finding that M. M. M. T. was still at risk for harm until the mother addressed and resolved her substance abuse issue, and demonstrated that she could meet the needs of the child as ordered in the case plan. The permanency plan was changed from reunification to reunification concurrent with adoption.

On February 18, 2013, the trial court entered an order extending the previous deprivation order. Prior to entering the order, the trial court conducted another hearing at which the mother was present and apparently testified. Following testimony showing, among other things, that she had been arrested for DUI twice, was without stable housing or income, and had not paid child support, the trial court found that there continued to be insufficient compliance with the mother's case plan. The trial court found that the child remained deprived and continued custody with DFACS, and further noted that the permanency plan was now adoption given DFACS' impending petition for termination of the mother's parental rights.

DFACS filed a motion for termination of the mother's parental rights on March 19, 2013, and the hearing was held on June 6 and 11, 2013. At the hearing, evidence showed, among other things, that, based on her psychological evaluation, the mother would be unable to permanently care for M. M. M. T. without a strong support

system, and needed to be monitored for substance abuse and obtain psychological treatment. The mother was also unemployed, did not have safe and stable housing for herself or M. M. M. T., had not successfully completed substance abuse treatment, and had not obtained any treatment for her fainting disorder. Further, the mother did not consent to enter family drug treatment court, and had not paid child support as ordered.

While the evidence showed that the mother had successfully maintained her visitation with M. M. M. T. and had bonded with her, it also demonstrated that the mother continued to show little progress toward being independent despite encouragement from service providers to get public housing and a job to show that she could care for M. M. M. T. The DFACS case worker testified that the child was having tantrums and pulling her own hair, behavioral issues which could be indicators of the emotional and behavioral problems associated with the lack of permanency in her life.

Based on these findings, as well as others demonstrating the mother's failure to comply with her case plan, and upon concluding that M. M. M. T. was deprived, that the lack of proper parental care and control by the mother is the cause of her deprivation, that the conditions and causes of the deprivation are likely to continue,

5

and that the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child, the juvenile court terminated the mother's parental rights.[3] Although the court acknowledged the bond the mother has

[3] As we have explained.

Georgia law provides for a two-step process that must be followed in determining whether to terminate parental rights. OCGA § 15-11-94 (a) requires that the trial court first determine whether there is present clear and convincing evidence of parental misconduct or inability. Parental misconduct or inability is determined under the four criteria set forth in OCGA § 15-11-94 (b) (4) (A) (i)-(iv). Those four factors are: (1) the child is deprived; (2) the lack of proper parental care and control by the parent whose rights are being terminated is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are shown to exist by clear and convincing evidence, then the court must also determine whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home.

(Punctuation omitted.) *In the Interest of K. D. E.*, 288 Ga. App. 520, 523 (654 SE2d 651) (2007). In 2013, the General Assembly adopted a new Juvenile Code to replace Chapter 11 of Title 15 of the Georgia Code. Ga. L. 2013, p. 294, § 1-1. The new Juvenile Code became effective on January 1, 2014, and does not apply to this case but to all juvenile proceedings commenced on and after January 1, 2014. Ga. L. 2013, p. 294, § 5-1.

with the child, it concluded that the mother's unwillingness to make the necessary changes to parent the child had prolonged the child's stay in foster care when she needs permanence and stability.

> While the record does show the mother's slight efforts to comply with some aspects of the case plan, what weight to give that evidence was a question for the trier of fact. Likewise, judging the credibility of her good intentions was a task for the juvenile court. Moreover, the juvenile court was authorized to consider the mother's past conduct in determining whether the causes of deprivation were likely to continue. And the decision as to a child['s] future must rest on more than positive promises which are contrary to negative past fact. Given this record, we conclude that the juvenile court was authorized to terminate the mother's parental rights. In accordance with Court of Appeals rules, we granted the mother's application for discretionary review without the benefit of the full appellate record, including the transcript of the termination hearing; however, because the record supports the order of the court below, we conclude that the application for discretionary appeal was improvidently granted. Accordingly, the order granting the mother's application is vacated, and her appeal is hereby dismissed.

(Punctuation and footnotes omitted.) *In the Interest of A. M. B.*, 324 Ga. App. 394, 395-396 (750 SE2d 709) (2013).

*Appeal dismissed. Boggs and Branch, JJ., concur.*

7