▬▬▬▬▬▬▬▬▬

S01A0197. IN RE L. C.
(548 SE2d 335)

SEARS, Justice.

The appellant, L. C., is a juvenile who was found to have committed an aggravated assault, a designated felony under OCGA § 15-11-63 (a) (2) (B) (ii). The juvenile court placed L. C. in the restrictive custody of the Department of Juvenile Justice pursuant to OCGA § 15-11-63 (e). The court ordered that L. C. be confined to a youth development center for 12 months, and that L. C. then be placed under intensive supervision for 12 months. On appeal, L. C. raises several constitutionality challenges to the designated felony statute, OCGA § 15-11-63,[1] including that it violates his constitutional right to a jury

---

[1] The juvenile court's order in this case was entered June 21, 2000. At that time, the designated felony statute was OCGA § 15-11-37. Effective July 1, 2000, former OCGA § 15-11-37 was redesignated as OCGA § 15-11-63. See Ga. Laws 2000, p. 20. Other than the redesignation, only minor editorial changes were made to the statute. Accordingly, all references in this opinion are to § 15-11-63.

trial. We conclude that the statute does not violate a juvenile's constitutional right to a jury trial, and that L. C. did not properly raise and obtain a ruling on the other constitutional challenges he asserts on appeal. For these reasons, we affirm the judgment of the juvenile court.

1. L. C. contends that OCGA § 15-11-63 is unconstitutional because it does not grant juveniles a right to a jury trial. More specifically, L. C. contends that fundamental fairness requires that juveniles have a right to a jury trial in proceedings under OCGA § 15-11-63 because OCGA § 15-11-63 is designed to punish juvenile offenders and is substantially similar to a criminal proceeding. For the reasons that follow, we disagree.

Both this Court and the United States Supreme Court have held that due process does not require a jury trial in juvenile cases.[2] In *McKeiver v. Pennsylvania*, the Supreme Court listed numerous reasons for this holding, including that the imposition of a jury trial would not strengthen the factfinding function of juvenile proceedings; that a jury trial requirement might in fact impede certain goals of the juvenile system such as rehabilitation; and that a jury trial requirement would bring delay and formality to the juvenile system.[3] In upholding the constitutionality of the statute at issue in *A. B. W. v. State*, this Court relied on the factors listed by the Supreme Court in *McKeiver* and emphasized both that the goal of the juvenile system was rehabilitation and treatment and that an adjudication of delinquency was not considered a conviction of a crime.[4]

L. C. acknowledges the holdings in *McKeiver* and *A. B. W.*, but contends that § 15-11-63, which was enacted in 1980,[5] well after the decisions in *McKeiver* and *A. B. W.*, has radically revised the treatment of juveniles found to have committed a designated felony, making the treatment of juveniles in such cases more like that of adults in criminal proceedings. We disagree. First, contrary to L. C.'s contention, the potential period of commitment of juveniles under § 15-11-63 is not radically different from the potential confinement of the juveniles in *A. B. W.* and *McKeiver*. For example, in *A. B. W.*, the period of initial commitment could have been as much as two years in an institution,[6] with the possibility of an extension of two additional years.[7] Under § 15-11-63, a child is placed in the custody of the

---

[2] *McKeiver v. Pennsylvania*, 403 U. S. 528 (91 SC 1976, 29 LE2d 647) (1970); *A. B. W. v. State*, 231 Ga. 699 (203 SE2d 512) (1974).

[3] *McKeiver*, 403 U. S. at 545-550.

[4] *A. B. W.*, 231 Ga. at 701-702.

[5] See Ga. Laws 1980, p. 1013.

[6] See Ga. Laws 1971, pp. 709, 735, 738.

[7] Id. at 739.

Department of Juvenile Justice for an initial period of five years.[8] The child must be confined in a youth development center for a period of "not less than 12 nor more than 60 months."[9] After the time that a child is confined in the youth development center, he is then required to be placed under intensive supervision for a period of 12 months.[10] Thus, as in L. C.'s case, a child could be confined for only 12 months in a youth development center, and then released under intensive supervision for another 12 months. OCGA § 15-11-63 also provides that a juvenile court may discharge a child from custody after one year.[11]

Moreover, we conclude that the central purpose of OCGA § 15-11-63 remains the rehabilitation and treatment of the child and not punishment. For example, OCGA § 15-11-63 (e) (2) (B) provides that, while in a youth development center, a child at any time "may be permitted to participate in all youth development center services and programs and shall be eligible to receive special medical and treatment services." And, after six months in a youth development center,

> a child may be eligible to participate in youth development center sponsored programs including community work programs and sheltered workshops under the general supervision of a youth development center staff outside of the youth development center; and, in cooperation and coordination with the Department of Human Resources, the child may be allowed to participate in state sponsored programs for evaluation and services under the Division of Rehabilitation Services of the Department of Labor and Division of Mental Health, Mental Retardation, and Substance Abuse.[12]

Furthermore, under OCGA § 15-11-63 (e) (2) (D), the Department of Juvenile Justice is required to report to the court at least every six months regarding the "status, adjustment, and progress of the child." In addition, in deciding whether restrictive custody under § 15-11-63 is required, a juvenile court is required to consider the "needs and best interests of the child."[13]

Finally, like the adjudication in *A. B. W.*, an adjudication that restrictive custody is required is not "a conviction of a crime and does not impose any civil disability ordinarily resulting from a conviction nor operate to disqualify the child in any civil service application or

---

[8] OCGA § 15-11-63 (e) (1) (A).
[9] OCGA § 15-11-63 (e) (1) (B).
[10] OCGA § 15-11-63 (e) (1) (C).
[11] OCGA § 15-11-63 (e) (2) (C).
[12] OCGA § 15-11-63 (e) (2) (B).
[13] OCGA § 15-11-63 (c) (1).

appointment."[14]

Thus, although OCGA § 15-11-63 has some punitive aspects, one of its primary functions is the treatment and rehabilitation of the child and an adjudication under it is not a criminal conviction. For these reasons, we conclude that an order of restrictive custody under § 15-11-63 is not sufficiently like a criminal adjudication to invoke a constitutional right to a trial by jury. In this regard, we note that numerous courts have considered whether a constitutional right to a jury trial is required under similar statutes and have reached the same result we reach today.[15]

2. As for L. C.'s other constitutional challenges to OCGA § 15-11-63, we conclude that they were not properly raised below, as L. C. did not specify either the particular part or parts of the statute that he was challenging or how those part or parts of the statute violated the constitutional provisions that he claimed were being violated.[16] In addition, the record shows that the only constitutional challenge ruled on by the juvenile court involved the constitutional right to a jury trial. This Court has held that it "will not rule on a challenge to the constitutionality of a statute unless the issue has been raised and ruled on in the trial court."[17] For these reasons, the other constitutional challenges raised by L. C. on appeal are not properly before this Court.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 11, 2001.

*David L. Whitman*, for appellant.
*Daniel J. Porter, District Attorney, Jeanette J. Fitzpatrick, Assistant District Attorney*, for appellee.

---

[14] OCGA § 15-11-72.

[15] *State v. Hezzie*, 580 NW2d 660, 673-674 (Wis. 1998); *In the Interest of J.F.*, 714 A2d 467, 471-473 (Pa. Super. 1998), appeal denied, 734 A2d 395 (Pa. 1998); *A.C. v. People*, 16 P3d 240, 243-245 (Colo. 2001); *In re L.A.*, 21 P3d 952 (Kan. 2001); *State v. Schaff*, 743 P2d 240, 242-245 (Wash. 1987); *United States v. C.L.O.*, 77 F3d 1075, 1077 (8th Cir. 1996).

[16] *Chester v. State*, 262 Ga. 85, 88 (414 SE2d 477) (1992); *Wallin v. State*, 248 Ga. 29, 30 (1) (279 SE2d 687) (1981); *DeKalb County v. Post Properties*, 245 Ga. 214, 218 (263 SE2d 905) (1980).

[17] *Lucas v. Lucas*, 273 Ga. 240, 242 (539 SE2d 807) (2000); *Bohannon v. State*, 269 Ga. 130, 137 (497 SE2d 552) (1998); *Hardison v. Haslam*, 250 Ga. 59, 61 (3) (295 SE2d 830) (1982).