A08A1715. IN THE INTEREST OF B. Q. L. E., a child.
(676 SE2d 742)

PHIPPS, Judge.

In April 2007, 13-year-old B. Q. L. E. was placed on 12 months probation after being adjudicated delinquent for public indecency. About six months later, her probation officer filed a complaint that she had violated terms of her probation by skipping class, skipping an entire day of school, and failing to notify her mother of her whereabouts. At a hearing on the related petition based upon these allegations, B. Q. L. E. admitted that she had committed the three acts. After several hearings regarding the appropriate disposition, the juvenile court entered an order adjudicating B. Q. L. E. delinquent, finding that she was in need of treatment or rehabilitation, and therefore committing the then 14-year-old to the Department of Juvenile Justice (DJJ) for care, supervision, and planning as provided in OCGA § 49-4A-8. It is from this order that B. Q. L. E. appeals. She contends that her commitment to the DJJ is illegal, that her detention during the pendency of the probation violation case violated a certain Code provision, and that her counsel was ineffective. For reasons that follow, we affirm.

1. B. Q. L. E. contends that the juvenile court erred by committing her to the DJJ, arguing that the commitment violated four statutory provisions.

(a) First, she cites OCGA § 15-11-67, which permits a juvenile court to order a DJJ commitment, but only under certain circumstances. B. Q. L. E. argues that the trial court was not authorized to find those circumstances here.

B. Q. L. E.'s reliance upon OCGA § 15-11-67 is misplaced because it expressly applies where the child is found to be "unruly." B. Q. L. E. was adjudicated delinquent, not unruly. B. Q. L. E. argues that she should have been adjudged unruly because each of the three acts of misconduct, without more, constituted a mere status offense.[1] But this argument overlooks the pertinent fact that B. Q. L. E. was already on probation for a delinquent act when she committed the

---

[1] See OCGA § 15-11-2 (11) ("status offender" means a child who is charged with or adjudicated of an offense which would not be a crime if it were committed by an adult, in other words, an act which is only an offense because of the perpetrator's status as a child, including acts of unruly behavior), 15-11-2 (12) (C) ("unruly child" means a child who has committed an offense applicable only to a child).

three acts at issue, which, as the juvenile court expressly found, violated terms of her probation. Disobeying such terms constituted a delinquent act.[2] And where a child is found to have committed a delinquent act and is subsequently determined to be in need of treatment or rehabilitation, OCGA § 15-11-66 (a) (4) authorizes the juvenile court to order the disposition best suited to the child's treatment, rehabilitation, and welfare, which may include committing the child to the DJJ.

B. Q. L. E. admitted that she had committed the three alleged offenses. Thereafter, upon the probation officer's recommendation and her mother's agreement, the court ordered that a psychological evaluation be performed on B. Q. L. E. and continued the case.

Having received the evaluation report, the court resumed the dispositional hearing. The report reflected B. Q. L. E.'s acknowledgment that she had engaged in "various delinquent behaviors, including cruelty to others, running away, theft, truancy, threats, and use of weapons," as well as "affiliat[ing] with members of several different gangs." In addition, the psychologist who conducted the evaluation concluded that B. Q. L. E. was functioning in the borderline range of intellectual ability and that the ninth grader's academic achievement was essentially at the fifth grade level. The psychologist also determined that B. Q. L. E.'s major issues were rooted in her emotional status; that her primary emotion was anger; and that she manifested symptoms suggestive of bipolar disorder. The psychologist further found that B. Q. L. E. did not accept responsibility for her own actions, but blamed her mother and others for all of her problems. The report also noted B. Q. L. E.'s desire to be placed somewhere other than her mother's home.

The probation officer reported at the hearing that B. Q. L. E. had "continuously been on the run," that B. Q. L. E. had admitted to her at one time that she had "been staying with several different boys"; and that her family had already been counseled by the Department of Family and Children Services. The probation officer recommended that B. Q. L. E. be committed to the DJJ and placed "in some type of therapeutic setting." B. Q. L. E.'s attorney, however, reported to the court that the juvenile did not want a commitment.

B. Q. L. E.'s mother told the court about her daughter behaving disrespectfully, acting out in school, and browsing porn websites. She further stated that B. Q. L. E.'s older sister — who "drinks" and "smokes" and who had run away from home twice — had been a bad influence on B. Q. L. E. The mother recommended stricter probation.

---

[2] OCGA § 15-11-2 (6) (B); *In the Interest of J. A. F.*, 262 Ga. App. 722, 723-724 (2) (586 SE2d 381) (2003).

The court expressed his inclination to commit B. Q. L. E. to the DJJ for two years, but continued the hearing to ascertain whether the DJJ would have adequate resources and supervision for the child.

When the disposition hearing resumed, the court remarked that it appeared that B. Q. L. E. required greater structure and supervision than probation could provide her, then requested responses from the state and the child's attorney. The probation officer repeated her recommendation that B. Q. L. E. be committed, recounting that B. Q. L. E. had been "missing" during most of the previous summer. The probation officer asserted that B. Q. L. E. remained a "run risk" and had mental health issues for which the court apparently could not provide help.

B. Q. L. E.'s attorney stated that she had attempted to work with B. Q. L. E., but had been unsuccessful at keeping the juvenile out of jail for long periods; the attorney asked that B. Q. L. E.'s mother be heard. B. Q. L. E.'s mother countered that her child was not "missing" during the entire summer, but only in September, when she had run away with her older sister, who the mother reiterated was "too advanced" for B. Q. L. E. In addition, the mother explained that she had not known about "all this psychological behavior she had" and thus had not known what kind of services to seek for B. Q. L. E. The mother believed that placing B. Q. L. E. in a family member's home separate from her older sister, together with proper supervision and counseling, were the keys to helping B. Q. L. E.

The juvenile court, however, agreed with the probation officer, determining that B. Q. L. E. had problems for which the court could not provide help, citing the psychological evaluation, and noting in particular the psychologist's recommendation that B. Q. L. E. be placed outside her home based upon her opinion that the juvenile would not receive while living at home the kind of intervention she needed.

In accordance with OCGA § 15-11-66 (a) (4), the juvenile court was authorized to find that B. Q. L. E. had committed a delinquent act, was in need of treatment or rehabilitation, and that the disposition best suited to the child's treatment, rehabilitation, and welfare was a commitment to the DJJ.[3]

(b) B. Q. L. E. argues that the commitment violates OCGA § 15-11-48 (e). But that Code provision also applies to "[a] child unruly or alleged to be unruly." Because B. Q. L. E. was adjudicated

---

[3] While not expressly stating in its order, the juvenile court remarked at the final hearing, "I'm going to commit her for two years to the Department of Juvenile Justice. Now, that just means that two years is a period of supervision." See, however, OCGA § 15-11-70 (a) (order of disposition committing delinquent or unruly child to DJJ continues in force for two years or until child is sooner discharged by DJJ).

delinquent, her reliance upon that Code provision is misplaced.

(c) B. Q. L. E. argues that the commitment violates OCGA § 15-11-24.2. That Code section sets forth duties of a probation officer, and B. Q. L. E. has shown no merit in her argument that the commitment to DJJ violates that Code section.

(d) B. Q. L. E. cites OCGA § 15-11-1, which mandates that the Juvenile Proceedings Chapter[4] be liberally construed to this end:

> (1) That children whose well-being is threatened shall be assisted and protected and restored, if possible, as secure law-abiding members of society; (2) That each child coming within the jurisdiction of the court shall receive, preferably in his or her own home, the care, guidance, and control that will be conducive to the child's welfare and the best interests of the state; and (3) That when a child is removed from the control of his or her parents the court shall secure for the child care as nearly as possible equivalent to that which his or her parents should have given the child.[5]

B. Q. L. E. argues that commitment to the DJJ for what she maintains was merely unruly behavior conflicts with that Code section.

As explained above, B. Q. L. E. was not adjudicated unruly, but delinquent, and the juvenile court's order of commitment based upon such an adjudication was authorized under OCGA § 15-11-66 (a) (4). A central purpose of a commitment to the DJJ remains the child's treatment, rehabilitation, and welfare.[6] Thus, contrary to B. Q. L. E.'s contention, her commitment pursuant to that Code provision harmonizes with the goals of the Juvenile Proceedings Chapter as set forth in OCGA § 15-11-1.[7]

2. B. Q. L. E. contends that the sentence imposed constitutes cruel and unusual punishment.

This contention miscasts the commitment under the Juvenile

---

[4] OCGA § 15-11-1 et seq.

[5] OCGA § 15-11-1 (1), (2), (3).

[6] See OCGA § 15-11-66 (a) (applicable where child has been found, among other things, to be in need of treatment or rehabilitation and authorizing disposition best suited to the child's treatment, rehabilitation, and welfare).

[7] See generally *In re L. C.*, 273 Ga. 886, 888-889 (1) (548 SE2d 335) (2001) (rejecting contention that an order of restrictive custody under OCGA § 15-11-63 was sufficiently like a criminal adjudication to invoke a constitutional right to a jury trial because, although that Code section has some punitive aspects, one of its primary functions is the treatment and rehabilitation of the child, and an adjudication thereunder is not a criminal conviction); *In the Interest of J. W.*, 293 Ga. App. 408, 410 (667 SE2d 161) (2008) (statutes relating to the same subject matter are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto).

Proceedings Chapter as a sentence of punishment and ignores the very purpose of the statutory scheme. The Supreme Court of Georgia has explained:

> The express purpose of the Juvenile Court Code is to assist, protect, and restore children whose well-being as secure members of society is threatened. In furtherance of that goal, the Legislature created a comprehensive civil forum for the treatment and protection of juveniles. The statutory scheme is replete with distinctions between criminal matters and matters concerning juveniles alleged delinquent. The juvenile code is concerned with the care, guidance, and well-being of children, and juveniles are declared delinquent because they need treatment and rehabilitation.[8]

B. Q. L. E.'s commitment "is not a conviction of a crime and does not impose any civil disability ordinarily resulting from a conviction nor operate to disqualify the child in any civil service application or appointment."[9] And for reasons set forth in Division 1 (a),[10] the commitment was statutorily authorized. To the extent that B. Q. L. E. argues that the statutory provisions collectively authorizing the commitment are unconstitutional, such argument is within the exclusive jurisdiction of the Supreme Court of Georgia.[11] We need not transfer the case for that Court's resolution of such claim because the argument was not raised below and therefore was not preserved for appellate review.[12]

3. B. Q. L. E. complains that the juvenile court erred in ordering her detained in custody during the pendency of her case. Maintaining that this case was based upon acts of unruliness, she argues that the detention violated OCGA § 15-11-48 (e). This argument is unavailing because that Code provision applies to cases involving "[a] child unruly or alleged to be unruly." As set forth above, during the relevant time, B. Q. L. E. was a delinquent child subject to probationary terms, when she allegedly, and then admittedly, committed acts in violation of those terms.

4. B. Q. L. E. contends that her trial counsel provided ineffective assistance, arguing that her lawyer's lack of preparation is to blame for the commitment. She does not seek remand, but asserts that the record amply demonstrates her claim of ineffective assistance

---

[8] *In re T. B.*, 268 Ga. 149, 150 (486 SE2d 177) (1997) (citations and punctuation omitted).
[9] OCGA § 15-11-72.
[10] Supra.
[11] *Harrison v. Wigington*, 269 Ga. 388, 389 (1) (497 SE2d 568) (1998).
[12] See *In re D. H.*, 283 Ga. 556, 557 (663 SE2d 139) (2008).

of counsel. Pretermitting whether this contention was preserved, B. Q. L. E. has failed to support it. She claims that trial counsel should have cross-examined the probation officer and the psychologist and also should have obtained a second opinion concerning her psychological state; however, she merely speculates that favorable evidence would have been revealed. Under these circumstances, B. Q. L. E. has failed to demonstrate a reasonable probability that additional preparation or action by her trial counsel would have changed the outcome of her case.[13]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 13, 2009 —
RECONSIDERATION DENIED APRIL 2, 2009 ▬▬▬▬▬▬

*Sherri J. Jefferson*, for appellant.
*Patrick H. Head, District Attorney, Stephen A. Delaney, Assistant District Attorney*, for appellee.

---

[13] See *In the Interest of T. K. L.*, 277 Ga. App. 461, 462-463 (5) (627 SE2d 98) (2006); see generally *Schofield v. Gulley*, 279 Ga. 413 (1) (614 SE2d 740) (2005).