**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**October 3, 2013**

# In the Court of Appeals of Georgia

A13A1161. IN THE INTEREST OF D. C., a child.                    JE-044C

ELLINGTON, Presiding Judge.

This appeal arises from a disposition order of the Juvenile Court of Chatham County that ordered the appellant, then 15 years old, to be confined in a youth development center for 36 months, followed by 12 months of intensive supervised probation. The appellant contends that the court abused its discretion in ordering him to such a long period of confinement because it failed to find that he had physically injured the victim of his most recent felony. Because we conclude that the trial court properly considered the evidence presented and the factors required to authorize its restrictive custody order and that it did not abuse its discretion in ordering 36 months of restrictive custody under the circumstances presented, we affirm.

Viewed in favor of the court's order,[1] the record shows the following facts. In November 2011, the juvenile court adjudicated the appellant delinquent after he stole a car and wrecked it, causing approximately $1,800 in damage.[2] The court placed the appellant, who was 14 years old at the time, on felony probation. After the appellant violated several terms of his probation, the court ordered him to wear an electronic monitoring device on his ankle so that the State could ensure that he did not leave his home or school without permission. In June 2012, after concluding that he had continued to violate the terms of his probation, the court placed the appellant in a short-term treatment program.

The next month, the court formerly adjudicated the appellant delinquent after concluding, inter alia, that he had left school without permission after removing his

[1] See *In the Interest of B. M.*, 289 Ga. App. 214, 214-215 (656 SE2d 855) (2008) ("In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged. Thus, the standard of review on appeal in a case of adjudication of delinquency of a juvenile is the same as that for any criminal case. In reviewing such cases, we do not weigh the evidence or determine witness credibility.") (citation and footnote omitted).

[2] The record shows that, at the time of the disposition order at issue on appeal, the appellant had failed to pay more than a nominal amount toward this restitution obligation.

ankle monitor and putting it in his school locker, thereby interfering with government property by circumventing the operation of his ankle monitor, an act that would be a felony if committed by an adult.[3] The appellant failed to appear for an August disposition hearing on that adjudication, so the court issued an arrest warrant. During the rescheduled disposition hearing in September, the court ordered the appellant to be assessed for substance abuse based on evidence that he had frequently used marijuana while on probation, but it decided to postpone, for 60 days, its decision on whether the appellant should remain on probation or be committed to restrictive custody. The court told the appellant that this 60 day period would give him the opportunity to show the court that he was willing and able to stop his bad behavior, to follow directions, and to accept the help he needed. In addition, the court specifically warned him that this would be his "last shot" to prove that he was willing to make these changes and that the next hearing would be the "moment of truth."

---

[3] See OCGA § 16-7-29 (b) (3) ("It shall be unlawful for any person to knowingly and without authority remove, destroy, or circumvent the operation of an electronic monitoring device which is being used for the purpose of monitoring a person who is . . . [w]earing an electronic monitoring device as a condition of probation[.]"); (d) ("Any person who violates this Code section shall be guilty of the offense of tampering with the operation of an electronic monitoring device and shall be punished by imprisonment for not less than one nor more than five years.").

Three weeks later, however, the State learned that the appellant had been found in possession of a stolen car and that he had driven it for a few days, even taking it to school and telling school officials that the car belonged to his aunt.[4] The owner of the car was a woman who was married to a military serviceman, and her husband had placed personal items, including his house key, and over $5,000 worth of government-owned military equipment in the trunk of the car before it was stolen. During the appellant's possession of the car, he took the items out of the car and discarded them in another part of town; while the military equipment was eventually recovered, the personal items were not. Because the victim's house key was missing and her husband had been deployed on a mission, she was too afraid to stay in the house alone and had to stay elsewhere for ten days, and she was forced to change the locks on her house. According to the victim, even though her home is in a "great community" where she previously felt safe while walking outside at night by herself, she has considered selling her home and moving because she no longer feels safe staying there alone.

---

[4] At the time of this car theft, the appellant was 15 years old and did not have a drivers license.

On October 5, the juvenile court conducted an adjudicatory hearing on a charge of theft by receiving a stolen motor vehicle that arose from the September incident and concluded that it constituted a designated felony. During this hearing, the appellant's mother reported that, in addition to the September theft by receiving incident, the appellant had taken her car three times without her permission in the past month and that he had wrecked it, causing about $4,000 in damage to the car. A month later, the court conducted a disposition hearing on the delinquency adjudications resulting from, inter alia, the theft by receiving charge, the related charge of interference with the government property that was in the trunk of that car, and the charges of interfering with an electronic monitoring device and driving without a license. Following the hearing, the court committed the appellant to the Department of Juvenile Justice Services for a period of five years as a designated felon, to serve the first thirty-six months in a youth development center, during which he would receive drug treatment, mental health counseling, educational assistance, and other services.

On appeal from that order, the appellant does not dispute that, having been adjudicated delinquent based upon a second act of theft by receiving a motor vehicle, the court properly concluded that he committed a designated felony act, as defined

by OCGA § 15-11-63 (a) (2) (E).[5] Instead, he argues that the court abused its discretion in ordering him to serve 36 months in restrictive custody in the absence of a finding that the victim of that theft suffered any actual physical injuries.

> Where a child is found to have committed a designated felony act, the order of disposition shall include a finding based on a preponderance of the evidence as to whether the child does or does not require restrictive custody under OCGA § 15-11-63. OCGA § 15-11-63 (b). To determine whether restrictive custody is warranted, the juvenile court must consider and make written findings about these factors: (1) the needs and best interest of the child; (2) the record and background of the child; (3) the nature and circumstances of the offense, including whether [the victim sustained an injury and, if so, whether the child caused the injury]; (4) the need to protect the community; and (5) the age and physical condition of the victim. OCGA § 15-11-63 (c).

(Citation and punctuation omitted.) *In the Interest of K. F.*, 316 Ga. App. 437, 439 (2) (729 SE2d 575) (2012).

> The purpose of the[se] specific findings [of fact] is to specify in writing the essential elements involved in the case of a particular juvenile and thereby assist the lower court in its consideration of all of the mandated

---

[5] Under OCGA § 15-11-63 (a) (2) (E), a "[d]esignated felony act" includes "an act which . . . [c]onstitutes a second or subsequent violation of Code Sections 16-8-2 through 16-8-9, relating to theft, if the property which was the subject of the theft was a motor vehicle."

statutory elements – *both those supporting and those mitigating against a particular case disposition.* By complying with statutory procedure, the lower court will have the documented benefit of those elements relevant to its *balancing process*, and an appellate court will have documented assistance in determining whether a breach of discretion may have occurred in a particular case.

(Emphasis supplied.) *In the Interest of C. T.*, 197 Ga. App. 300, 304 (3) (398 SE2d 286) (1990). "The weight to be accorded each factor, and the ultimate decision about whether restrictive custody is warranted, is committed to the sound discretion of the juvenile court." (Citation omitted.) *In the Interest of K. F.*, 316 Ga. App. at 439 (2). In other words, OCGA § 15-11-63 (b) and (c) does not require that a juvenile court find that there was evidence on each factor that *supports* restrictive custody. Instead, it requires the court to consider each factor and to document its findings thereon, to then weigh those findings that favor restrictive custody against those that do not, and, finally, to use its broad discretion in deciding whether to order restrictive custody. Id.

In this case, the juvenile court specifically addressed each of the five factors in OCGA § 15-11-63 (c) during the disposition hearing and then issued an order of disposition that included written findings of fact as to each of those factors, as required by OCGA § 15-11-63 (b). As to the "needs and best interests of the child,"

7

the court found that the appellant "is in desperate need of structure in his life. His behavior is strictly self centered. He must learn to regard the property rights of others. He is in need of drug treatment and mental health counseling. He also needs assistance in taking school seriously." The court's order included a comprehensive list of the appellant's criminal history, including his two thefts by receiving a motor vehicle and his multiple probation violations. As to the "nature and circumstances of the offense," including whether the child injured the victim, the court found that, although "[n]o physical injury was suffered by the victim of the most recent motor vehicle theft," she suffered an "emotional injury . . . in the form of fear to venture out at night and fear concerning the safety of personal property." Regarding the "need for protection of the community," the court found that both of the car thefts "were acts of opportunity. In the last case, the vehicle belonged to a military service member who left his military gear in the trunk of the vehicle. When this child obtained the vehicle, he scattered the contents of the trunk around the neighborhood although it was clearly marked as military equipment."[6]

---

[6] In addition, as to the final factor, the "age and physical condition of the victim," the court noted that the victim and her husband were adults in good physical health. Cf. *In the Interest of J. W.*, 306 Ga. App. 339 (702 SE2d 649) (2010) (a delinquency adjudication and an order of restrictive custody for a juvenile involved in an aggravated assault on a 62-year-old victim).

"The [juvenile] court's written findings must afford this Court a basis for meaningful appellate review by showing that the determination as to restrictive custody was not arbitrary, and that the court gave due consideration to each of the required statutory findings." (Citation and punctuation omitted.) *In the Interest of K. F.*, 316 Ga. App. at 439 (2). In this case, the court was authorized to find that the appellant's criminal history, his repeated violations of his probation while living at home, and his frequent use of marijuana demonstrated that restrictive custody was in his best interests, as well as the community's, and outweighed the absence of any physical harm to the victim of the September theft by receiving incident. Accordingly, we conclude that the court's findings in this case complied with OCGA § 15-11-36 (b) and (c) and that it did not abuse its discretion in ordering the appellant to serve 36 months in restrictive custody. Id.[7]

---

[7] In *In the Interest of K. F.*, this Court concluded that the following written findings of fact showed that the juvenile court properly considered the factors in OCGA § 15-11-63 (c) in ordering restrictive custody for the appellant:

that K. F. had three prior separate felony adjudications, and that[,] although none of the burglary victims were home when K. F. committed the crimes, "the victims uniformly expressed continuing ill ease in their homes["; that] K. F. had a pistol during the commission of the crimes, had shown "no regard for anyone but himself" and that the community

*Judgment affirmed. Phipps, C. J., and Branch, J., concur.*

---

needed protection from him[; that] K. F. needs a more structured environment and has demonstrated that he cannot control his actions [; and that it is] in his best interest to receive control and assistance to prevent him from entering the adult system.

316 Ga. App. at 439 (2).