**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 21, 2014**

# In the Court of Appeals of Georgia

A13A2022. IN THE INTEREST OF T. D. J., JR., a child.

BRANCH, Judge.

On September 14, 2012, one or more individuals fired gunshots at a crowd of people dispersing from a local football game in Macon; the crowd included at least six police officers. T. D. J., Jr., age 14 at the time, was arrested and eventually charged with being delinquent or unruly based on six counts of aggravated assault on a peace officer and one count of possession of a handgun by an underage person; he was also charged with a violation of probation. Following a bench trial held in juvenile court on November 29, 2012, T. D. J. was found guilty on six counts of the lesser included offense of aggravated assault and guilty as charged on the remaining counts. As a consequence, T. D. J. was adjudicated to be a designated felon under OCGA § 15-11-

63[1], committed to the Department of Juvenile Justice for 60 months, and required to serve 48 of those months in restrictive custody, with credit for 75 days of time served. In reaching the decision on sentencing, the juvenile court considered the child's needs and best interests, his record and background, the nature and circumstances of the offense, the need for protection of the community, and the age and physical condition of the victim. Following the denial of his motion for new trial, T. D. J. appeals. We affirm.

1. T. D. J. contends the evidence was insufficient to support the adjudication of delinquency. On appeal of a juvenile court's adjudication of delinquency, this court determines whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *In the Interest of R. J. S.*, 277 Ga. App. 74 (625 SE2d 485) (2005); *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

---

[1] As of the time of trial, the term "designated felony act" was defined to mean, among other things, an act which if done by an adult, would be one or more of certain specified crimes including aggravated assault if done by a child 13 or more years of age. OCGA § 15-11-63 (a) (2) (B) (ii) (2012). This section has been repealed effective January 1, 2014 and replaced, in part, by new §§ 15-11-2 (12) and (13), which contain newly worded definitions. See Ga Laws 2013, Act 127, § 1-1.

At trial, Sergeant Brad Surfus testified that he saw a small-in-stature, lone black male, wearing black clothes, fire approximately six rounds toward a crowd of approximately 100 or more people from a position on the left rear corner of a certain building located near the stadium where the game had been held. Surfus radioed Officer Cason Grant with the information and saw the perpetrator run around the back side of the building and back into view on the right side of the same building. Surfus and other officers continued to pursue the individual, and Surfus saw the individual throw a pistol to the ground near a parked SUV. Surfus retrieved the weapon and it was introduced into evidence. Surfus testified that there were street lights illuminating the area where the events occurred, and at trial, he identified T. D. J. as the person he saw shooting the gun and later discarding it. He also testified that he only lost sight of T. D. J. during the brief time that T. D. J. ran behind the building, but that he recognized T. D. J. when he came from behind the building based on the youth's small stature and clothing. Surfus testified that he had a reasonable apprehension that he might have been shot. He also testified that several other officers were endangered by the shooting, including Aaron Miller, Timothy Moore, Jesse Thompson, and Timothy River.

Officer Grant testified that as he and other members of the Macon Police Department Strike Unit were responding to calls for assistance from off-duty officers as the football game let out, he heard gun fire coming from behind some apartments located about 150 yards from his position. As the shooting continued, he saw muzzle flashes and the silhouettes of people near the same building identified by Surfus. Some of the shots were fired in Grant's direction, which placed Grant in reasonable apprehension of being shot. As Grant moved toward the building, he saw that five or six individuals were present, and that one or more of the individuals were shooting. Grant saw the individuals run around the building, and, at the right side of the same building, he encountered the same individuals as they ran out from behind the building. Grant specifically saw T. D. J. running and saw him throw down a handgun near an SUV parked nearby. Grant estimated that T. D. J. was between five feet and five feet two inches tall. Grant pursued briefly, but other officers apprehended T. D. J. nearby. One other individual was apprehended that evening, as well. At trial, Grant identified T. D. J. as the person who he saw run and discard the gun. T. D. J. testified and the court was able to observe his height.

Construed in favor of the prosecution, the above evidence was sufficient to support a finding of guilt on six counts of aggravated assault and one count of

4

possession of a handgun by an underage person. See OCGA §§ 16-5-21 (a) (2) (aggravated assault with a deadly weapon); 16-11-132 (b) (possession of a handgun by a minor).[2] See also *In the Interest of T. Y. B.*, 288 Ga. App. 610, 612 (654 SE2d 688) (2007). Moreover, because the evidence included direct evidence in the form of eyewitness testimony identifying T. D. J. as shooting and discarding the gun, the appellant's argument that the State's evidence was circumstantial and failed to exclude all other reasonable hypotheses save T. D. J.'s guilt is without merit. *Daniel v. State*, 285 Ga. 406, 407 (2) (677 SE2d 120) (2009). See also *Simmons v. State*, 262 Ga. App. 164, 166 (1) (a) (585 SE2d 93) (2003) (positive identifications of defendant by witnesses is direct rather than circumstantial evidence of guilt).

Finally, the State presented sufficient evidence of identification to sustain the conviction. Surfus testified that he could see the shooter initially because of nearby streetlights and that he saw the same person run from behind the other side of the building and discard the gun. And Surfus was able to identify that person as the appellant. See *In the Interest of T. O. J.*, 295 Ga. App. 343, 345 (1) (672 SE2d 14)

---

[2] T. D. J. does not separately contest the finding that by committing aggravated assault, he violated his probation arising from a prior incident.

5

(2008) (eyewitness testimony of three victims identifying appellant as shooter "was more than sufficient to sustain the convictions").[3]

2. T. D. J. contends that his sentence of four years in custody was improper for two reasons. He first argues that when considering his sentence, the juvenile court failed to take into account certain factors required by the United States Supreme Court in *Miller v. Alabama*, __ U. S. __ (132 SCt 2455, 183 LE2d 407) (2012). He also contends that the sentence constitutes cruel and unusual punishment in violation of the Georgia Constitution and of the Eight and Fourteenth Amendments of the United States Constitution because the sentence was grossly disproportionate to his crime and does not bear a reasonable relationship to the legitimate legislative concerns of deterring crime or rehabilitation.

(a) *Miller*, however, is distinguishable and not applicable to the case before us. In *Miller*, the United States Supreme Court determined that the Eighth Amendment's prohibition of cruel and unusual punishment "forbids a sentencing scheme that

---

[3] The case of *Towns v. State*, 136 Ga. App. 467 (221 SE2d 631) (1975), upon which the appellant relies, is distinguishable; it addresses the validity of pre-indictment witness-defendant confrontations rather than eyewitness identification at trial, such as here.

mandates life in prison without possibility of parole for juvenile offenders." Id. (II) (132 SCt at 2469). As a part of its reasoning, the Supreme Court noted

> that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform . . . they are less deserving of the most severe punishments.

(Citations and punctuation omitted.) Id. at 2464. The "most severe punishments" addressed by the Supreme Court were mandatory life sentences without parole for juveniles being charged as adults. Id. at 2465. Thus, the court reasoned,

> By removing youth from the balance – by subjecting a juvenile to the same life-without-parole sentence applicable to an adult – these [sentencing] laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender.

Id. at 2466. In addition, the court likened a mandatory life sentence without parole to the death penalty, and it therefore applied precedent demanding individualized sentencing when imposing such a sentence. Id. 2467.

The present case is obviously quite different. Here, the appellant was not subject to one of the "most severe punishments" allowed by law. Rather, he was tried as a child in the juvenile justice system where the goal is rehabilitation and treatment

and where an adjudication of delinquency is not considered a conviction of a crime. See *In re L. C.*, 273 Ga. 886, 887 (1) (548 SE2d 335) (2001). Moreover, he was sentenced under OCGA § 15-11-63, the central purpose of which is "the rehabilitation and treatment of the child and not punishment." *In re L. C.*, 273 Ga. at 888 (1). And the statute specifically requires the juvenile court to take into account the "needs and best interests of the child," which the juvenile court did. OCGA § 15-11-63 (c) (1). In short, *Miller v. Alabama* is not applicable to the case before us. See *People v. Pacheco*, 991 NE2d 896, 906 (Ill. App (4th) 2013) (*Miller v. Alabama* "was only concerned with the death penalty and life without the possibility of parole, which are the two most severe punishments allowed under the United States Constitution.").

(b) T. D. J.'s argument that his sentence amounts to cruel and unusual punishment under the Georgia[4] and United States Constitutions has been waived because it was not raised and ruled on below at the sentencing hearing. *Brinkley v. State*, 291 Ga. 195, 196 (1) (728 SE2d 598) (2012) (failure at sentencing hearing to raise a "complaint that a sentence imposes upon a defendant a cruel and inhuman punishment, in violation of the (state and federal) constitutional provision" waives issue on appeal even when, as noted by the dissent, the "[a]ppellant is not challenging

---

[4] Ga. Const. of 1983, Art. I, Sec. 1, Par. XVII.

the general constitutionality of the statute under which he was prosecuted, but the sentence as applied to him based on his status as a juvenile offender"). See, e.g., *Brinkley v. State*, 320 Ga. App. 275, 282 (6) (739 SE2d 703) (2013) (juvenile's argument that life sentence violated the constitutional prohibition against cruel and unusual punishment because defendant was only 14 years old at the time of the offenses "was waived for appellate review because it was not timely raised in the trial court").

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*