**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 9, 2023**

# In the Court of Appeals of Georgia

A23A0622. IN THE INTEREST OF L. J., a child.

MARKLE, Judge.

L. J., a minor, was adjudicated delinquent for misdemeanor possession of a handgun by a person under the age of 18 and felony theft by receiving stolen property. He now appeals from the juvenile court's disposition order, committing him to the custody of the Department of Juvenile Justice ("the Department") for 24 months. On appeal, L. J. contends the juvenile court abused its discretion by (1) finding that reasonable efforts had been made to prevent or eliminate the need to remove him from his home, pursuant to OCGA § 15-11-600 (a) (1); and (2) issuing a ruling that was not the least restrictive disposition under OCGA § 15-11-601 (a). For the reasons that follow, we affirm.

We review a juvenile court's disposition following a determination of delinquency for an abuse of discretion. See *In re M. A. I.*, 319 Ga. App. 578, 583 (2) (737 SE2d 585) (2013). "An abuse of discretion occurs where the trial court significantly misapplies the law or clearly errs in a material factual finding." (Citations and punctuation omitted*.) In re R. W.*, 315 Ga. App. 227, 232 (3) (c) (726 SE2d 708) (2012).

So viewed, the record shows that then-16-year-old L. J. was charged with the misdemeanor offense of possessing a handgun by a person under the age of 18. L. J. admitted to the charge and the juvenile court adjudicated him delinquent, setting the disposition hearing for a later date. See OCGA § 15-11-600 (a), (b). Before the hearing could occur, L. J. was arrested and charged with felony theft by receiving stolen property after he was found driving a stolen vehicle. Following a detention hearing, the juvenile court committed him to a youth detention center. L. J. admitted to the charge, and the juvenile court again adjudicated him delinquent. The court released L. J. from detention, placing him under house arrest on the condition that he would wear an electronic monitor and comply with a supervision plan. Shortly after his release, however, L. J. left the house without permission , and was again committed to a youth detention center.

At the subsequent disposition hearing, the evidence showed that L. J. did not begin acting out until the recent death of his mother. The court's intake officer testified that L. J.'s pre-dispositional risk assessment showed him to be "high risk." He further testified that L. J.'s relationship with his father was strained, and that L. J. had a history of running away from his father's house, sometimes not returning for more than a month at a time. Both the intake officer and the guardian ad litem expressed concern that the father was not providing proper supervision. The guardian ad litem also reported that L. J. had not participated in certain social services that had been offered, such as trauma-based therapy, due to his runaway status. Nevertheless, the guardian ad litem recommended releasing L. J. to his father's care.

L. J.'s father testified that he wanted L. J. to be returned to him. Although L. J. initially indicated that he wanted to return to his father, upon further questioning by the court, he stated that he did not wish to be placed with his father, and that such an arrangement would likely be unsuccessful. Upon hearing this testimony, the guardian ad litem amended her recommendation to committal to the Department, to which the State joined.[1] Ultimately, the juvenile court committed L. J. to the

---

[1] The State initially sought 18 months of probation.

3

Department for 24 months, but strongly recommended that L. J. be transferred to a non-secure placement as soon as possible. This appeal followed.

1. L. J. contends that the juvenile court abused its discretion by finding that reasonable efforts had been made to prevent or eliminate the need to remove him from his home, pursuant to OCGA § 15-11-600 (a) (1) (C), because it ignored mitigating evidence that supported placing him with his father. We disagree.

After a court adjudicates a child delinquent,[2] the court must then "hear evidence and determine whether: (A) Such child is in need of treatment, rehabilitation, or supervision; (B) Such child's continuation in his or her home is contrary to such child's welfare; and (C) Reasonable efforts have been made to prevent or eliminate the need to remove such child from his or her home." OCGA § 15-11-600 (a) (1) (A-C). The trial court is granted broad discretion in making these determinations in the dispositional phase of the proceedings, and "may consider any evidence, including hearsay evidence, that the court finds to be relevant, reliable, and

---

[2] Under our Juvenile Code, a delinquent child is one "who has committed a delinquent act and is in need of treatment or rehabilitation." OCGA § 15-11-2 (20). A delinquent act is "[a]n act committed by a child designated a crime by the laws of this state . . . [that] is not an offense applicable only to a child or a juvenile traffic offense." OCGA § 15-11-2 (19) (A). L. J. does not challenge the adjudication of delinquency on appeal.

necessary[.]" OCGA § 15-11-600 (f); see *In re M. D.*, 233 Ga. App. 261, 262 (1) (503 SE2d 888) (1998) ("[V]irtually any evidence that is material and relevant on the issue of disposition is admissible, because for purposes of making an appropriate disposition, the court needs to know as much about the child as possible.") (citation and punctuation omitted).

Here, in committing L. J. to a secure facility, the juvenile court found that L. J. is a child in need of rehabilitation, treatment, and supervision; returning L. J. to his father's home was contrary to his welfare; and reasonable efforts had been made to prevent L. J.'s removal from the home. See OCGA § 5-11-600 (a) (1) (A-C). Regarding the reasonable efforts prong under OCGA § 5-11-600 (a) (1) (C), the juvenile court expressly noted the short period of time between L. J.'s delinquent acts, and that L. J.'s tendency to run away had impeded his participation in rehabilitative services, such as trauma-based cognitive behavioral therapy, a substance abuse assessment, and teen-parent mediation. The juvenile court further noted that, despite being placed under house arrest with an electric monitor, L. J. removed the monitor and ran away again. As such, we cannot say the juvenile court abused its discretion

in determining that reasonable efforts had been made to prevent the removal of L. J. from his home.[3] See *In re R. W.*, 315 Ga. App. at 232 (3) (c).

2. L. J. next argues that the trial court abused its discretion by failing to consider all of the factors listed under OCGA § 15-11-601 (a) to ensure the least restrictive disposition was imposed. Again, we disagree.

OCGA § 15-11-601 (a) provides, in pertinent part:

> At the conclusion of the disposition hearing, if a child who committed a delinquent act is determined to be in need of treatment or rehabilitation, then after considering the results of such child's risk assessment if the court is contemplating placing such child in restrictive

---

[3] L. J. points to purportedly mitigating evidence showing that he suffered trauma as a result of his mother's death and the resultant separation from his siblings; he did not have stable housing, but instead was bounced around between relatives before moving in with his father; and he was in need of grief counseling, supervision, and pro-social activities while his father was at work and school was not in session. However, L. J. fails to show how these facts necessitate a finding that reasonable efforts had not been made to prevent his removal from home, especially in light of the evidence, above, that persuaded the juvenile court otherwise. Moreover, it is not for us to weigh the evidence. See *In re B. M.*, 289 Ga. App. 214 (656 SE2d 855) (2008) ("In reviewing [delinquency] cases, we do not weigh the evidence or determine witness credibility.") (citation omitted); see also *In re D. C.*, 324 Ga. App. 95, 98 (748 SE2d 514) (2013) ("[T]he ultimate decision about whether restrictive custody is warranted, is committed to the sound discretion of the juvenile court.").

custody, the court shall enter the least restrictive disposition order appropriate in view of the seriousness of the delinquent act, such child's culpability as indicated by the circumstances of the particular case, the age of such child, such child's prior record, and such child's strengths and needs.

Under OCGA § 15-11-601 (a) (11), a trial court is authorized to commit such a child to the Department for an offense that would have been a felony if perpetrated by an adult, as here.[4] See also OCGA § 15-11-601 (a) (10) (A).

Based on the evidence presented at the hearing and the juvenile court's findings in its order, we cannot say that it abused its discretion in committing L. J. to the Department as the least restrictive disposition. Notably, the juvenile court stated

_____

[4] While acknowledging that the juvenile court was authorized to commit him to the Department because he perpetrated a felony, pursuant to OCGA § 15-11-601 (a) (10) (A), L. J. nevertheless contends that the statute reserves such a serious disposition only in the cases of multiple bad acts under OCGA § 15-11-601 (a) (10) (B), and that these two sections must be read in tandem. He points to no authority in support of his interpretation. We note that these two sections are disjunctive, separated by the word "or." OCGA § 15-11-601 (a) (10) (A), (B). As we have explained, "[t]he word 'or' normally indicates an alternative. An ordinary speaker of the English language generally would not say that 'or' is equivalent to 'and' or 'as well as.'" (Citation and punctuation omitted.) *McDonald v. Reyes*, 365 Ga. App. 317, 318 (2) (878 SE2d 79) (2022). As our rules of statutory construction require us to apply a word's ordinary signification, we decline to adopt L. J.'s proposed interpretation. Id.; see also *Mays v. State*, 345 Ga. App. 562, 567 (814 SE2d 418) (2018) ("[T]his Court does not have the authority to rewrite statutes.") (citations and punctuation omitted).

in its order that it considered all of the factors under OCGA § 15-11-601 (a). It further noted the result of L. J.'s risk assessment; his age; strengths, such as his high intelligence; as well as his needs, including increased supervision and strengthening familial bonds. The record showed that L. J.'s crimes, to which he admitted guilt, had increased in severity in a very short time frame. The trial court was clearly concerned by this rapid progression, and specifically found that L. J.'s "continued detention is necessary to protect the person and property of others[.]" See *In re B. Q. L. E.*, 297 Ga. App. 273, 274 (1) (a) (676 SE2d 742) (2009) (where child committed additional delinquent acts while on probation for a previous one, former version of OCGA § 15-11-601 (a) "authorize[d] juvenile court to order the disposition best suited to the child's treatment, rehabilitation, and welfare, which may include committing the child to the [Department].").

Furthermore, in light of L. J.'s unequivocal testimony that he did not want to be released to his father's care and that it was unlikely their relationship could be repaired, he cannot show that the trial court abused its discretion by instead committing him to the Department.[5] In the disposition order the trial court referred

---

[5] L. J. contends that the juvenile court foreclosed his opportunity to show that he was a child in need of services, and thus eligible for placement with the Department of Family and Children Services (DFCS). The record belies this

8

to this testimony, and ultimately concluded that "it is contrary to [L. J.'s] welfare for him to remain in his home in light of the child's current struggles with following his father's directives." See OCGA § 15-11-601 (a) ("The court may make any of the following orders of disposition . . . best suited to such child's treatment, rehabilitation, and welfare[.]"). As such, the juvenile court's order complies with the directives of OCGA § 15-11-601 (a), and thus there was no abuse of discretion. See *In re R. W.*, 315 Ga. App. at 232 (3) (c).

*Judgment affirmed. McFadden, P. J., and Brown, J., concur.*

---

argument. Although the court disclosed its general reservations regarding a DFCS placement at the outset of the hearing, it placed no limitations on the scope of counsel's examination of the witnesses. Ultimately, the trial court found that DFCS placement was inappropriate as there was no evidence that L. J. had either been abused or neglected at home, and that he was in need of rehabilitation and treatment — not supervision alone. See OCGA § 15-11-600 (e) (a court may determine a child to be in need of services, and enter a disposition accordingly, "[i]f the court finds that a child who committed a delinquent act is in need of supervision but not of treatment or rehabilitation"); see also OCGA § 15-11-442. In light of the evidence, as recounted above, we cannot say the trial court abused its discretion in this regard.